641 So.2d 499 (1994)
Lewis B. TUNNAGE, Appellant,
v.
Virginia BOSTIC and Ulysses Carter, Appellees.
No. 93-1635.
District Court of Appeal of Florida, Fourth District.
August 24, 1994.
Robert W. Sidweber of Robert W. Sidweber, P.A., Fort Lauderdale, for appellant.
Raleigh R. Rawls, Fort Lauderdale, for appellee Virginia Bostic.
PER CURIAM.
This case presents the issue of whether a new trial is warranted when the trial court fails to rule and enter a final judgment within a reasonable amount of time. Although we establish no bright line rule of when a delay in ruling becomes unreasonable, we hold that under the facts of this case, due to the confusing nature of the final order, and the seventh month delay, a new trial is warranted.
The instant case arose out of the following property dispute. Lewis B. Tunnage took title to a parcel of land from Ulysses Carter pursuant to a warranty deed executed on or about May 25, 1988. Prior to closing on this property, Tunnage claims that Carter told him that he owned the property and Virginia Bostic, his sister, was a tenant who was only living on the property on a day to day basis. Tunnage also claims that Carter told him that Bostic had no legal title and she was a relative who was living on the property without paying rent. Further, Tunnage claims he was told that all he would have to do is send Bostic a letter and she would remove herself. In addition, when Tunnage asked Carter if there was any lease he responded "No." Carter also gave Tunnage an affidavit at closing that read:
That the above described property is free and clear of all liens, taxes, encumbrances, and claims of every kind, nature, and description whatsoever.
Bostic did not in fact remove herself from the property, but rather claimed title to the property pursuant to an "articles of agreement" issued on July 16, 1971, between Ulysses Carter, his then wife, Nuna Mae and Bostic, conveying the land to Bostic for a five hundred dollar ($500.00) down payment and the eleven thousand five hundred dollar ($11,500.00) balance payable in equal monthly installments of $70.00 with 5% interest on the unpaid balance. These articles of agreement were never recorded and Bostic defaulted on her payments; she stopped making them altogether in December 1983. As a result, Carter sent her a letter cancelling the articles of agreement, but Bostic continued to reside on the premises.
After an unsuccessful eviction action, Tunnage filed the instant suit seeking to quiet title to the property, as well as a declaratory judgment, ejectment, and termination and foreclosure of the articles of agreement. Tunnage also sought damages against Carter based upon fraud, misrepresentation, and fraudulent inducement/recision of deed. Carter failed to respond, and on August 15, *500 1991, a default was entered by the clerk against Carter.
The case between Tunnage and Bostic was tried on January 7, 1992. After no judgment was forthcoming, Tunnage's counsel sent correspondence to the court dated February 24, 1992, and April 6, 1992, reminding the court that judgment had not been entered. Counsel then prepared a motion to determine status of final judgment which was heard by the court on July 8, 1992. On August 20, 1992, over seven (7) months from the time of the trial, final judgment was entered. The final judgment is confusing, and in some instances contradictory in its provisions. Moreover, it fails to include an award against Carter, notwithstanding the default and Tunnage's clear proof of fraud and damages. In some respects, the final judgment is not supported by the evidence adduced at trial.
Tunnage filed a motion for rehearing/clarification, which was heard on November 16, 1992. On February 16, 1993, after no word from the court, Tunnage's counsel filed a motion to determine status of rehearing/clarification. A hearing was held, and two months later there was still no action, so a second motion to determine status was filed on May 3, 1993. On that same date, the trial court entered an order denying the motion for rehearing with prejudice. Almost one year and four months elapsed between the time of the trial and the order entered on the motion for rehearing. Given the procedural circumstances of this particular case, such a delay was "unreasonable," and coupled with the fatal deficiencies in the final judgment noted above, we are compelled to reverse.
Rule 2.050(f), Florida Rules of Judicial Administration provides in pertinent part:
Every judge has a duty to rule upon and announce an order or judgment on every matter within a reasonable time. Each judge shall maintain a log of cases under advisement and inform the chief judge of the circuit, at the end of each case that has been held under advisement for more than sixty (60) days.
Prior case law does not indicate with any precision what constitutes a "reasonable time." However, the fifth district in Polizzi v. Polizzi, 600 So.2d 490, 491 (Fla. 5th DCA 1992), explains that the purpose of the above cited rule is so that the trier of fact can recall the testimony and the demeanor of the witnesses as well as the dynamics of the trial. In Polizzi, the court granted a new trial because the trial and judgment were separated by a long length of time (three months), and because the judgment did not reflect the evidence or the oral pronouncements at trial.[1]
At bar, we do recognize, as the Fifth District did in Polizzi, that dockets are sometimes overloaded and clerical help can be in short supply. Id. at 491. Nonetheless, the delay at bar in this case was seven months, which is four months longer then the delay in Polizzi. In addition, due to the confusing nature of the final judgment, it cannot be determined with certainty whether the final judgment reflected the evidence or whether the trial court recalled the testimony of witnesses or the dynamics of the trial. Though we establish no bright-line rule as to what constitutes a "reasonable time," we do believe that the confusing nature of the final judgment renders the seven month delay in this case unreasonable. We cite as an example of the confusing nature of the final order, the following portion of that order which provides:
It is the understanding of this court that a foreclosure sale resulting in the successful bid of a stranger to these proceedings purchasing the equitable interest of Bostic will bifurcate the equitable interest of Bostic and the successful bidder but there is ample precedent for such result and the parties will be left with the situation they may find themselves in the event of such possibility becoming an actuality.
It is difficult to ascertain from this paragraph of the final judgment why the lower court is referring to the successful bid of a stranger, as well as what the court envisions as "the situation the parties may find themselves *501 in." An additional example of the contradictory nature of the final judgment is the fact that in paragraph nine (9) of the final judgment the court reserves jurisdiction for the entry of future orders including "Writs of Possession." However, in paragraph seven (7), the court states, "no writ of possession shall be issued predicated upon this judgment." Finally, the fact that the trial court did not even render a judgment against Carter in spite of the previous default entered against him, provides further grounds for this reversal. This also lends support for the premise that the delay might have affected the judge's memory of the events that took place at trial and surrounding the trial. We reverse and remand for a new trial.
WARNER, POLEN and PARIENTE, JJ., concur.
NOTES
[1] An additional basis for reversal in Polizzi, was that the trial judge himself, did not prepare the order. Id. at 491.