670 So.2d 1191 (1996)
Dawn LEWIS, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
Nos. 95-921, 95-1108.
District Court of Appeal of Florida, Fifth District.
April 4, 1996.
*1192 Stephen E. Hilker of Stephen E. Hilker, P.A., Palatka, for Appellant.
Frances S. Childers of Department of Health and Rehabilitative Services, Child Welfare Legal Services, Gainesville, for Appellee.
THOMPSON, Judge.
Dawn Lewis ("the mother") appeals the final judgment terminating her parental rights to her son ("M.L.") and the order of disposition terminating her parental rights and permanently committing M.L. for subsequent adoption.[1] She argues that the trial court erroneously admitted hearsay evidence during the adjudicatory hearing, and erroneously conducted the disposition hearing in the absence of her attorney. We find that the first issue is dispositive. We reverse and remand for further proceedings.
M.L. was born when the mother was 16 years old. Because the mother consumed alcohol during the pregnancy, M.L. was born with Fetal Alcohol Syndrome ("FAS") and was diagnosed with failure to thrive syndrome. The FAS caused the child to have a small stature, a small head, heart problems, and developmental delay. The child is expected to suffer from mental retardation, hyperactivity, temper tantrums and small stature as he matures. M.L. also has epilepsy, and he appears near death during seizures. HRS filed a petition for dependency alleging that M.L. was at significant risk of imminent abuse or neglect because the mother was unable to care for him or address his special medical needs. Rather than contest the allegations, the mother waived counsel and entered into a stipulation of dependency. The trial court entered an order of dependency and appointed a Guardian Ad Litem ("GAL") who represented M.L. through the disposition hearing. Initially, M.L. was allowed to remain in the custody of the mother. Subsequent to the adjudication of dependency, the mother was represented in all proceedings by an attorney from a legal aid society or an attorney appointed by the trial court.
At the first dependency review hearing, the trial court ordered that M.L. be placed in foster care because the mother was not taking the child to the doctor, following feeding instructions for the child, or cooperating with the professionals who were visiting her home. She had also "yanked" the child by his arm when he cried uncontrollably because of his medical problems. The GAL reported that she had observed the yanking when the mother took the child to a hospital emergency room.
The mother signed a performance agreement that set specific goals for her to complete before the child would be returned to her. Two and a half years after signing the agreement, the mother had not completed the goals set forth in the performance agreement. The trial court ordered the child to remain in foster care and ordered HRS to prepare the case for termination of parental rights and for permanent commitment for subsequent adoption. HRS filed the petition which the mother denied.
*1193 The adjudicatory hearing was held in three sessions: February 7, 1995; February 28, 1995; and March 7, 1995. Evidence was presented at the first two sessions, and, at the conclusion of the second session, the court informed the attorneys that closing argument and clarification from the GAL would occur at the March 7 adjudicatory hearing. The court stated:
The testimony and evidence has been completed, but we're really not through yet because we have the final summation and there's some materials that the counsel wanted to go over in the depositions, and the guardian ad litem's report and although that guardian has testified, they want to argue some material in that issue.
Unknown to the mother, the court also ordered the GAL and HRS to make unannounced visits to the home where the mother had been staying for the prior six weeks. Because the mother had led a nomadic lifestyle, the court was concerned about the mother's current residence and employment. The GAL and HRS did visit, did take photographs, and did file supplemental reports. The supplemental reports concluded that the Lutterman home, at which the mother was staying, was not a good environment for the mother and M.L. This conflicted with a previous report which said the Lutterman home was an acceptable residence. The reports were not provided to the mother or her attorney until the morning of March 7, 1995, the day of the final adjudicatory session. The trial court did not allow the mother to offer testimony to refute the contents of the reports or to cross-examine the GAL and the HRS counselor because, the court stated, it did not want to reopen the case. After this session, the trial court entered a detailed order terminating the parental rights of the mother. The order included findings from the supplemental GAL report that the home in which the mother was staying was not a good environment for M.L.
The mother's first point on appeal is that the orders of adjudication and disposition should be reversed because the trial court took into consideration the supplemental reports and photographs, and did not allow her an opportunity to cross-examine the GAL and the HRS counselor, or to offer testimony to refute the contents of the report. We agree for two reasons.
The purpose and duties of a GAL in termination proceedings are set forth in subsection 39.465(2)(a) and (b), Florida Statutes. The only mention of procedures concerning a written GAL report is section 39.465(2)(b)(1), which requires that a written GAL report be provided to all parties and the court at least 48 hours before the dispositional hearing. The obvious intent of this requirement is to allow parents an opportunity to present witnesses and evidence to refute the statements made in the report. Although the hearing on March 7, 1995 was an adjudicatory and not a dispositional hearing, the reports of the GAL and HRS are admissible as long as the section 39.465(2)(b)(1) procedures are followed and the report is provided to all parties. The same procedures should apply since the purpose is to allow parents an opportunity to respond to the report. At the very least, parents should be able to contest the report if it is filed at the beginning of the hearing. By not following the statute, the trial court erred.
The trial court also erred, and denied the mother due process, because hearsay evidence was used to terminate her parental rights. During the adjudicatory stage of a proceeding, a trial court is required to apply the "rules of evidence in use in civil cases." § 39.467(5)(b), Fla.Stat. (1993); see also In Interest of S.J.T., 475 So.2d 951, 953 (Fla. 1st DCA 1985). Therefore, findings of fact in an adjudicatory hearing must be based on evidence admissible under the rules of evidence in civil cases. The reports of the GAL and HRS constituted hearsay, yet the mother never had the opportunity to test their accuracy. More important, the trial court relied upon the reports and the photographs in reaching his decision that "[t]he mother is not presently disposed to provide the child with a stable home, food, clothing, medical care or other material needs."
A trial court is prohibited from relying upon a social investigation report when it is not provided to the parents or they are not allowed an opportunity to depose or crossexamine *1194 the preparer. In Leinenbach v. Leinenbach, 634 So.2d 252, 253 (Fla. 2d DCA 1994), the court held that, "due process prohibits a trial court from relying upon a social investigation report" without permitting the parties to "rebut the conclusions or recommendations contained in the report." See also In re Gregory, 313 So.2d 735 (Fla.1975); Clayman v. Clayman, 536 So.2d 358 (Fla. 3d DCA 1988). Additionally, the mother should have been allowed to present her own case to challenge the evidence. See, Vazquez v. Vazquez, 626 So.2d 318, 319 (Fla. 5th DCA 1993) (holding that party was deprived of her right to participate in hearing if she was not given an opportunity to testify or to present witness who was present to testify). The same standard should apply in a termination case where the mother is permanently deprived of any right to the child. § 39.469(2)(b).
HRS argues that the orders of the trial court should be sustained because even without the hearsay the record contains sufficient competent evidence to support the orders. HRS cites King v. Department of Health and Rehabilitative Srvs., 601 So.2d 1343 (Fla. 3d DCA 1992) to support its argument. In King the mother appealed the final order adjudicating her daughter dependent. The mother alleged that the trial court erred by admitting hearsay statements of two of her other children pursuant section 90.803(23), Florida Statutes. The district court held that even if the trial court erroneously admitted the hearsay statements, the error was harmless given the multiple grounds for the dependency adjudication. Id.
We note that King was a dependency case and that the standard for establishing dependency is preponderance of the evidence. § 39.408(2)(b), Fla.Stat. (1993). In a termination of parental rights case, on the other hand, the standard is clear and convincing evidence. § 39.467(1), Fla.Stat. (1993). We note further that the United States Supreme Court has held that a natural parent has a "fundamental liberty interest" that is protected under the federal constitutional provisions relating to due process of law. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). This case involves a significant due process violation in that the trial court refused to allow the mother to be heard on the contents of the "secret" report ordered by the court and submitted to the court after the close of evidence. No matter how strong the evidence in support of the termination, the mother is entitled to due process. See Kern v. Kern, 333 So.2d 17, 19 (Fla.1976).
The second issue raised by the mother is that the court erred in conducting the disposition hearing in the absence of her attorney. At the time of the disposition hearing, the mother's attorney phoned the court and said she was unavoidably detained. The attorney asked that the hearing be continued until she could arrive. The trial court waited, but decided to conduct the hearing without the mother's attorney and entered the order of disposition. In the order, the trial court adopted and reaffirmed its final judgment which terminated the mother's parental rights and permanently committed M.L. to HRS for adoption. This issue is moot, since we reverse the two orders, but we note in passing that an attorney should be present at each stage of a termination proceeding in order to render effective assistance of counsel. § 39.465(1)(a); In Interest of M.R., 565 So.2d 371 (Fla. 1st DCA 1990). We are certain that the attorney for the mother will be present at rescheduled proceedings.
Accordingly, we reverse the orders of adjudication and disposition and remand with instructions. First, the trial court must conduct an additional hearing to allow the mother to present evidence and testimony to rebut the reports of HRS and the GAL and the photographs viewed by the court. Second, because all parties have had an opportunity to review the report and the photographs, the hearing should be held within 30 days of the filing of this opinion. Third, the trial court which entered the orders should preside at the hearing. This will limit the duration of the hearing and will protect the mother's right to due process. Because the only objection the mother has raised with regard to the adjudicatory hearing was the denial of an opportunity to contest the reports and the *1195 photographs, the trial court need not conduct the adjudicatory hearing de novo. Fourth, M.L. shall remain in the custody of HRS until the trial court enters an order after the hearing. Finally, the trial court need not conduct separate adjudicatory and dispositional hearings. The October 1, 1994 amendments to §§ 39.467 and 39.469 require only one hearing to be held. Moore, 664 So.2d at 1139.
REVERSED and REMANDED with instructions.
GOSHORN and GRIFFIN, JJ., concur.
NOTES
[1] We have consolidated the mother's two appeals. Recently, we held that the dispositional order is the final order for purposes of appeal. Moore v. Department of Health and Rehabilitative Services, 664 So.2d 1137 (Fla. 5th DCA 1995). A notice of appeal directed to an adjudicatory order is treated as a premature notice which is held in abeyance until entry of the dispositional order. Id.