674 So.2d 774 (1996)
Jaye DUVA, Appellant,
v.
Charles DUVA, Appellee.
No. 94-2803.
District Court of Appeal of Florida, Fifth District.
April 19, 1996.
Rehearing Denied June 5, 1996.
Lawrence J. Nixon, of Nixon, Quarles & Toung, Daytona Beach, for Appellant.
Kenneth W. McIntosh and Catherine D. Reischmann, of Stenstrom, McIntosh, Colbert, Whigham & Simmons, P.A., Sanford, for Appellee.
*775 PER CURIAM.
Appellant, Jaye Duva, appeals the Final Judgment of Dissolution of Marriage and an order amending the final judgment and denying rehearing. The issue in this case is whether the trial court's ten-month delay in rendering the final judgment prejudiced appellant and requires a new trial. For the reasons set forth below, we hold that it does not and affirm.
Jaye Duva filed for dissolution of marriage on August 3, 1992. Dr. Charles Duva, her husband, was designated the temporary primary residential parent of their daughter, Lindsey, and given exclusive use of their DeLand home. Mrs. Duva was awarded $500.00/month in temporary alimony and resided in the couple's condominium in Palm Coast.
A trial was held in November and December of 1993. The testimony established that the Duvas were married in 1977 and had one child who recently died as a result of a third liver transplant that failed. Mrs. Duva worked as a registered nurse at the time the couple was married but during their marriage she was a homemaker and the primary care giver for Lindsey. She also ran an interior design business. Dr. Duva was a physician who also owned and operated a weight control clinic. Dr. Duva was in private practice until April 1992; at the time of dissolution, he worked as an emergency room physician at a salary of $144,000.
The couple owned a house in DeLand appraised at $237,000, which was substantially encumbered. They also owned a condominium in Palm Coast appraised at $166,500 and a business property in DeLand appraised at $147,000 out of which Dr. Duva operated his weight-loss clinic. Mrs. Duva had operated her interior design business from the same property but discontinued her business due to a lack of funds. The weight-loss clinic's income was used to pay the building's mortgage, property taxes, upkeep, and a renovation loan and therefore did not show a profit. Additionally, the Duvas had a one-half interest in a residence occupied by Dr. Duva's mother.
The record indicates that the litigation in this divorce proceeding was protracted and bitter. Financially, the couple's debt included $125,000 for their daughter's medical bills and four mortgages. Dr. Duva's only income at the time of the final judgment was from his medical practice.
During the ten month period between the end of the trial and the filing of the final judgment, both the husband and wife filed motions before the court. In March, Mrs. Duva filed a motion for contempt and in May she filed an emergency motion for additional alimony. The court held a hearing on the motion in June. In July, Dr. Duva filed a motion for contempt asserting Mrs. Duva entered his residence and place of business and removed a number of objects. In September, Mrs. Duva filed an emergency motion for relief. Finally, Lindsey went to live with her mother in October of 1994 and Mrs. Duva filed a motion for temporary child support.
The court did not enter a final judgment until October 21, 1994. The court allowed Dr. Duva to keep the DeLand home as long as Lindsey lived with him. He was required to sell the house if Lindsey no longer resided there and divide the proceeds equally with Mrs. Duva. The condominium was to be put up for sale and the proceeds split equally. Mrs. Duva kept her interest in her mother-in-law's house but Dr. Duva received title to the business property. The court divided a pension plan equally between the two parties and determined the valuation date to be the date of the final judgment. Dr. Duva assumed all the credit card debt, medical bills, and mortgage payments. Mrs. Duva was awarded temporary and permanent alimony beginning the date of the final judgment.
Mrs. Duva sought a rehearing and amendment of the final judgment. In particular, she asserted that the court failed to address the issue of attorney's fees, ownership of a jet ski, whether she could keep her health insurance, and whether she could restore her maiden name. Mrs. Duva also asserted that the court failed to distribute all the property and provide her with retroactive alimony. At the hearing on the motion, the judge admitted he forgot to address the issue of attorney's *776 fees, agreed to provide for the name change and jet ski and explained why he had ruled the alimony was not to be retroactive. The court issued an amended final judgment on November 9, 1994 in which it addressed these issues and denied Mrs. Duva's motion for rehearing.
Appellant contends that she was prejudiced by the trial court's improper[1] delay in entering a final judgment on her petition for dissolution of her marriage. Her contention is that the delay deprived her of the relief she requested and contributed to continued post-judgment hardship since the decision, when finally rendered, bore little relation to their then current status. She asserts that such a prejudicial delay requires a new trial. Dr. Duva, relying principally on Judge Sharp's dissent in Polizzi v. Polizzi, 600 So.2d 490 (Fla. 5th DCA 1992) asserts that appellant failed to challenge the delay at the trial level or make a record sufficient to support her claims. He further urges that the delay has not been shown to have affected the ability of the court to rule accurately.
Mrs. Duva asserts that the lengthy delay deprived the order of validity. She urges, as Judge Harris suggested in Peterson v. Murrah, 622 So.2d 1167 (Fla. 5th DCA 1993), that undue delay strips a trial court's final judgment of any presumption of correctness because a delay makes it more difficult for the trier of fact to recall testimony, the demeanor of witnesses, and the dynamics of trial. She also relies on the decision of the Fourth District Court in Tunnage v. Bostic, 641 So.2d 499 (Fla. 4th DCA 1994), noting that the delay in Tunnage was only seven months, whereas, in this case the delay was ten months.
Dr. Duva distinguishes Tunnage on the basis that the Tunnage court found the judgment to be confusing, contradictory and incorrect in certain respects making it impossible to determine whether the appealed judgment had been based on the evidence, the testimony of witnesses and the "dynamics of trial." Id. at 500. Dr. Duva urges that the judgment in this case suffers from none of the infirmities in Tunnage and that delay alone will not support reversal for a new trial.
Two more recent cases, Falabella v. Wilkins, 656 So.2d 256 (Fla. 5th DCA 1995) and McKenzie v. McKenzie, 672 So.2d 48 (1996) arguably lend support to Mrs. Duva's argument on appeal. Falabella was a sixteen-month delay in issuing a custody order in a case involving an unmarried couple. This court found the delay to require reversal because of the nature of the proceeding and because of the extraordinary deference appellate courts are obliged to give the trial court's decision on such family issues. Falabella at 256. In McKenzie, the First District relied on Falabella in reversing a judgment rendered after a one year delay. The court observed that there were "inconsistencies" in the judgment suggesting that the trial judge may not have recalled the evidence presented at the hearing.
In the present case, Mrs. Duva attempts to show comparable inconsistencies but we find the deficiencies simply too minor or marginal; they do not, standing alone, undermine the judgment. Moreover, the parties were before the court often in the ten-month period and the court's record comments suggest that he was familiar with and was at least thinking about the task of issuing a final judgment.
Our decision in this case does not reflect a lack of commitment to the policy that judgments be rendered promptlyespecially those that require the judge, as fact finder, to make specific factual findings. In this regard, we observe that the recently issued report of Florida's Bench/Bar Implementation Committee recommends an amendment to the Rules of Judicial Administration as a remedy for such unexcused delays as we have in this case:
Each Chief Judge of a circuit shall implement procedures to monitor matters held under advisement for more than 60 days. Upon learning of a matter held under advisement in excess of 60 days, the Chief Judge shall notify the judge, who shall *777 thereafter rule within the time directed by the Chief Judge. Those judges failing to comply with such directives shall be considered to have neglected their duty pursuant to Rule 2.050(g) of The Florida Rules of Judicial Administration.
Rep. Bench/Bar Implementation Comm. (Dec. 1996).[2] While we might suggest this rule be made even stronger, this solution to the problem is preferable to the only remedy the appellate court can confera new trial even though the prevailing party is in no way responsible for the delay and even though the judgment was supported by competent evidence in the record.
AFFIRMED.
GOSHORN, HARRIS and GRIFFIN, JJ., concur.
NOTES
[1] In support of her position, appellant cites Rules of Judicial Administration 2.050(f) which states, "Every judge has a duty to rule upon and announce an order or judgment on every matter submitted to that judge within a reasonable time."
[2] The report bears a 1996 date but was issued in 1995.