688 So.2d 359 (1997)
FLORIDA AIR ACADEMY, INC., Appellant,
v.
Mickey S. McKINLEY, Appellee.
No. 96-1665.
District Court of Appeal of Florida, Fifth District.
January 10, 1997.
Rehearing Denied February 27, 1997.
William C. Potter of Potter, McClelland, Marks & Healy, P.A., Melbourne, for Appellant.
Frank C. Kruppenbacher of Kruppenbacher & Associates, P.A., Orlando, for Appellee.
COBB, Judge.
The appellant, Florida Air Academy, Inc., was the defendant below in an action brought by Mickey McKinley for wrongful discharge from employment. McKinley was employed by Florida Air, a private preparatory school, as a weekend commandant charged with managing other employees of the school.
McKinley's contract of employment provided that he could be terminated for neglect of duty. He apparently became dissatisfied with the management of the school, and in May, 1991, he had an acrimonious confrontation *360 with his supervisor, the commandant of the school, one Bill Davidson. McKinley's version of this confrontation varied dramatically from that of Davidson. According to Davidson, McKinley had repeatedly been directed to counsel with an officer about inappropriate behavior and belligerently refused to do so, while at the same time voicing a number of other complaints. Accordingly to McKinley, he was subjected to an unprovoked and unjustified tirade by Davidson and summarily fired.
A non-jury trial was held on October 15, 1994. It was stipulated by the parties that the trial court would rule only on the issue of liability because, in the event of a finding of such liability, the parties felt they could mutually resolve any damage issues. At the conclusion of the trial the judge commented that there were "inconsistencies on both sides' positions" and that he was in an absolute quandary as to what to do and that the facts were rather confusing. He then said that he was in agony as to how to rule and had gone back and forth on the liability issue about six times during the trial. He also stated that if he were to find for the plaintiff he "would do everything in my power to only render a dollar judgment." He finally concluded with the following statement:
THE COURT: I guess what we'll probably have to do is have the Plaintiff send me a final judgment with a blank finding in favor of the Plaintiff, leaving a blank there and then submitting an agreed amount that you all think is the amount and either letting me commit reversible error for that amount or some lessor amount: and review the notes that I have.
A lot of times after I think about it for twenty-four hours, the salient important points will come out and I may reconcile some things that I have in my mind.
Unfortunately, the trial judge thereafter did not enter judgment until May 19, 1996, following entry of an "Order for Final Judgment" dated February 2, 1996, announcing a finding of liability for the plaintiff. The issue now before us is whether this inordinate delay by the trial judge entitles Florida Air to a new trial.
We have dealt with the issue of delayed rulings by a trial judge in a number of prior cases. See, e.g., Duva v. Duva, 674 So.2d 774 (Fla. 5th DCA 1996); Falabella v. Wilkins, 656 So.2d 256 (Fla. 5th DCA 1995); Williams College v. Bourne, 625 So.2d 913 (Fla. 5th DCA 1993); Polizzi v. Polizzi, 600 So.2d 490 (Fla. 5th DCA 1992). None of these prior cases is directly controlling in the instant case, but Duva, Williams and Polizzi indicate that a key factor in such cases is whether or not there is any conflict or inconsistency between the judge's statements or findings at the time of trial and the ultimate judgment entered later, or if there is a factual finding in the final judgment unsupported by the trial evidence. See also, McKenzie v. McKenzie, 672 So.2d 48 (Fla. 1st DCA 1996); Tunnage v. Bostic, 641 So.2d 499 (Fla. 4th DCA 1994). We find no such conflicts, inconsistencies or absence of supportive evidence in the instant case. We reiterate, however, our comment in Duva:
Our decision in this case does not reflect a lack of commitment to the policy that judgments be rendered promptlyespecially those that require the judge, as fact finder, to make specific factual findings. In this regard, we observe that the recently issued report of Florida's Bench/Bar Implementation Committee recommends an amendment to the Rules of Judicial Administration as a remedy for such unexcused delays as we have in this case:
Each Chief Judge of a circuit shall implement procedures to monitor matters held under advisement for more than 60 days. Upon learning of a matter held under advisement in excess of 60 days, the Chief Judge shall notify the judge, who shall thereafter rule within the time directed by the Chief Judge. Those judges failing to comply with such directives shall be considered to have neglected their duty pursuant to Rule 2.050(g) of The Florida Rules of Judicial Administration.

Rep. Bench/Bar Implementation Comm. (Dec.1996) [footnote omitted]. While we might suggest this rule be made even stronger, this solution to the problem is preferable to the only remedy the appellate court can confer-a new trialeven *361 though the prevailing party is in no way responsible for the delay and even though the judgment was supported by competent evidence in the record.
The dissent suggests a per se rule of reversal for such unjustified delays in entry of judgment as occurred in this case. While that approach is tempting, and the argument for it persuasive, it simply cannot be reconciled with the prior precedent of this court. See, e.g., Duva, Williams, and Polizzi.
AFFIRMED.
DAUKSCH, J., concurs.
HARRIS, J., dissents with opinion.
HARRIS, Judge, dissenting.
I respectfully dissent.
There is simply no justification for a judge waiting for over sixteen months to decide on a verdict in a case no more complex than this one. Although the trial court announced a very tentative leaning toward the plaintiff at the close of the evidence, the record reflects that it was in considerable doubt and was unsure as to which way it would ultimately rule in this case. The court indicated that it would have to review its notes and "think about it for twenty-four hours [and then] the salient important points will come out and I may reconcile some things that I have in my mind."
Both sides are entitled to a fair, full and timely consideration of the case, and the timely review of the notes and the thoughtful consideration of the testimony by the court while it can still remember the testimony and the demeanor of the witnesses is essential to a fair trial. Instead, the judge put the file away for almost a year and a half. Any evidence of a timely and thoughtful consideration of the attitude or the demeanor of the witnesses in order to determine their credibility after the trial court assured the parties that it intended further review and consideration is lacking in this case. The judge ultimately ruled on stale notes, a cold record, and a vague, at best, recollection of the proceedings. In my view, this is unacceptable practice.
Trial counsel must realize that they also have an obligation to assure that a judgment is rendered within a reasonable time. If a judgment is not entered within 60 days after the trial, they should inquire either of the assigned judge or the chief judge as to the reason. If the chief judge is put on notice, he or she then has an obligation to see that a judgment is timely entered. By doing nothing, counsel has contributed to the problem and cannot complain if a new trial is ordered.