719 So.2d 977 (1998)
A. Grayson WALKER, III, Appellant,
v.
Susan WALKER, Appellee.
No. 97-2989.
District Court of Appeal of Florida, Fifth District.
October 23, 1998.
*978 Kyle D. Pence of Stolbreg and Pence, Fort Lauderdale, for Appellant.
Cris Bates Foster of The Law Office of Cris Bates Foster, Melbourne, for Appellee.
W. SHARP, Judge.
Grayson Walker, the former husband, appeals from a final judgment of dissolution which terminated the parties' six-year marriage. He first contends there was a substantial delay between the date the trial of this case was completed, and the rendition of the final judgment (approximately 9½ months), which resulted in the judgment being replete with inconsistencies and deficiencies. He further contends that the trial court erred in imputing a level of income to him which is not supported by competent evidence, that the trial court abused its discretion in failing to give him credit for payments he made on a mortgaged property the parties jointly owned, and that the court erred in finding the husband's wrongful termination settlement was marital property. We agree this cause must be remanded for a new trial because of the first point. We comment on the other points in order to expedite the handling of this already too delayed and over-litigated case.
An excessive delay between a trial and entry of final judgment may require reversal. Caswell v. Caswell, 674 So.2d 861 (Fla. 2d DCA 1996). Florida Rule of Judicial Administration 1.050(f) provides:
(f) Duty to Rule within a Reasonable Time. Every judge has a duty to rule upon and announce an order or judgment on every matter submitted to that judge within a reasonable time. Each judge shall maintain a log of cases under advisement and inform the chief judge of the circuit at the end of each calendar month of each case that has been held under advisement for more than 60 days.
*979 Unlike the appellate situation, the demeanor of witnesses forms an important part of the lower court's fact-finding decision. Thus, the purpose of this rule is to allow the trial court to recall the testimony and demeanor of witnesses and the dynamics of the trial in rendering the final judgment. Polizzi v. Polizzi, 600 So.2d 490 (Fla. 5th DCA 1992).
The definition of "reasonable time" appears to be determined on a case-by-case basis. Florida Rule of Judicial Administration 2.085(d)(1)(C) provides that a reasonable time for contemplation of a contested dissolution case is 180 days from the day of filing until the day of disposition. However, there is no "bright line" as to what is an unreasonable delay. Tunnage v. Bostic, 641 So.2d 499 (Fla. 4th DCA 1994). In Duva v. Duva, 674 So.2d 774 (Fla. 5th DCA 1996), a ten-month delay between the trial and the rendition of a final judgment did not require a new trial. There, the court found the inconsistencies in the final judgment were not substantial, the parties had appeared before the court during the ten-month period, and the court had made comments on the record which indicated that the judge continued to be familiar with the facts during the ten-month period. But the Duva court noted that the decision did not reflect a lack of commitment to the policy that judgments are to be rendered promptly, especially those that require a judge to act as fact finder and make factual findings. Duva at 779.
In Florida Air Academy, Inc. v. McKinley, 688 So.2d 359 (Fla. 5th DCA 1997), this court again refused to reverse and remand after an even longer delay: 15 months. The court noted that a key factor in delay cases is whether there is conflict or inconsistency between the trial court's statements or pronouncements at the time of trial and the ultimate written judgment, or if there is a factual finding in the final judgment which is not justified by the record. In McKinley, there were no conflicts or inconsistencies; hence reversal was not required.
The First District found that inconsistencies in the final judgment, rendered a year after the final hearing, required reversal in McKenzie v. McKenzie, 672 So.2d 48 (Fla. 1st DCA 1996). A seven-month delay was held to be unreasonable in City of Miami v. Tarafa Construction, Inc., 696 So.2d 1275 (Fla. 3d DCA 1997), and Tunnage. In both cases the courts noted confusing and contradictory provisions in the final judgments. This court reversed in Falabella v. Wilkins, 656 So.2d 256 (Fla. 5th DCA 1995) and found that a delay which exceeds 16 months was "indefensible and intolerable" and in Williams College v. Bourne, 625 So.2d 913, 914 (Fla. 5th DCA 1993), where the record was insufficient to support fact finding in the judgment after a 21-month delay.
The former husband suggests that the delay in this case resulted in a final judgment which on its face reveals the trial court had forgotten much of the substance of the case and trial evidenced by contradictory and confusing provisions in the final judgment. For example, the final judgment provides:
3. The Petitioner and Respondent entered into a stipulation which was memorialized in writing which resolved the issues between the parties as to repairs to be made to the marital residence, the Respondent's entitlement to a certain portion of the Petitioner's interest in the IBM stock and retirement plan, as well as certain issues as to the residential responsibility of the parties' minor child, and aspects of parental responsibility. Said agreement is hereby ratified, approved and specifically incorporated in this Final Judgment and the parties are ordered to comply with the terms and provisions hereof. (emphasis added)
On January 10, 1996, the parties entered into a "Temporary Settlement Agreement" pertaining to issues regarding the child, and which the trial court approved by written order on January 24, 1996.[1] There is also an *980 order approving the parties joint stipulation (the Stipulation). Specific provisions of the final judgment conflict with those which are contained in the Stipulation. Specifically:

Provision Final Judgment Stipulation
Child Support $799.67 month; $523.00 month
 retroactive to 9/21/95[2]
Custody Sole Parental[3] Shared; wife has
 emergency decisions
Visitation Lengthy & specified Lengthy & specified (but
 different from judgment)
Mortgage/marital Husband owes Wife Wife is responsible
residence $15,420.00 (for period (Husband was responsible
 wife had previously been for mortgage on other
 made responsible) property)

There was also a verbal stipulation at the commencement of the trial in this matter.
The court may have forgotten that the parties had stipulated at the beginning of the trial that two marital assets awarded to the wife (the marital residence and a boat) would be sold. In addition, the trial court ordered in the final judgment that all child support payment would be paid through the Clerk of the Circuit Court and include administrative fees, although the parties had stipulated the payments would be made via automatic transfer. The final judgment also includes a day-care obligation of $650 per month, of which the former husband was ordered to pay "50.5% of 75%" of that sum. However, at trial the testimony established the child was attending a Montessori school at a much lesser monthly cost.
Pursuant to the stipulation, the former wife was required to pay the mortgage on the marital residence and the former husband was required to pay the mortgage on the Lansing Island Property. The final judgment provides that the former husband owes a credit to the wife in the amount of $13,670 for the mortgage payment paid by the former wife pursuant to the stipulation, but it completely ignores the mortgage payments the former husband made on the other property.
On remand, the trial court should make specific findings concerning the husband's income and his earning ability in the event it elects to impute income to the former husband. In this case, the trial court found he had imputed income of $47,000 per year. Yet at the time of trial the husband was unemployed and had as his sole income $1,083 per month in unemployment benefits.[4] He testified he had sought employment consistently but had been unsuccessful. In order to impute income to an unemployed parent, the court must first find the parent is voluntarily unemployed or under-employed, and if so income should be imputed on the parent's recent work history. § 61.30(2)(B), Fla. Stat.; Ensley v. Ensley, 578 So.2d 497 (Fla. 5th DCA 1991).
In this case, the former husband established his income for the past five years had been sporadic:

*981
1990 $43,000
1991 $47,000
1992 $98,000
1993 $24,000
1994 $18,000
1995 $21,215

The trial court averaged his income for this six-year period, to arrive at $47,000 per year. However, even based on figures over six years, the former husband's average income was only $41,869. Further, the court did not use this method in computing the former wife's income level, which had also dropped from prior years. Both parties should be treated equally in this regard.
We are also puzzled by the trial court's handling of the $189,200 settlement award the parties received in 1995 for the former husband's wrongful termination of employment by his prior employer on September 14, 1989two days before the parties were married. The former wife joined in the lawsuit by filing a loss of consortium claim. At trial, the parties' former attorney who handled that suit testified there had been no allocation of the total recovery to the individual claims. Part of the claim was based on past wages and part on future lost wages of the husband.[5] But the settlement indicated it was for personal injury and counsel fees. No income tax was due on these funds. The loss of consortium claim was treated as of little significance.
Weisfeld v. Weisfeld, 545 So.2d 1341 (Fla. 1989) dealt with the treatment of workers compensation awards in divorce cases. It approved an analytic approach. Marital property in such awards includes lost wages or lost earning capacity during the marriage, and medical expenses paid from marital funds. Award for pain and suffering and loss of future wages and future medical expenses are the separate (non-marital) property of the injured spouse. It cited to Distribution of Personal Injury Awards Upon Divorce, 56 Fla. B.J. 552 (1982).
In this case, no such analysis was attempted. The court simply concluded that because the settlement funds had been paid to the parties jointly and initially put into a joint account that made the award "marital," as opposed to "non-marital property." Based on an analysis pursuant to Weisfeld, it is questionable whether the award could be made up of any marital property. The lost, past-wages factor was earned in this instance before the parties married. Also the termination did not impact his future earning power during the marriage because he had already suffered the termination before they married. If the award encompassed damages for pain and suffering and future lost wages, those sums are non-marital. Weisfeld. On remand, an analysis pursuant to Weisfeld and specific findings to support the trial court's conclusions as to the marital or non-marital nature of this award should be made.
We reverse this case in all regards except for the dissolution of marriage, and remand for a new trial. The custody determination may be revisited on remand.
REVERSED and REMANDED.
COBB and GOSHORN, JJ., concur.
NOTES
[1] There is also a Memorandum Agreement (apparently as a result of mediation between the parties, dated January 10, 1996); a Stipulated Order for Grandparent Visitation, dated May 30, 1996, an order granting the husband's parent's motion to intervene for the purposes of obtaining grandparent visitation with the minor child; and an order modifying visitation dated October 8, 1996.
[2] This date is earlier than the court's January 24, 1996 order setting child support at $523.00; the final judgment finds the husband in arrears for $13,177.74.
[3] For "day to day decisions to be made for the minor child" and specifically listing six "major" decisions, in which the parties shall have "shared parental responsibility."
[4] Although he had had a consulting job just prior to the final hearing which had paid $2,000 per week, the job was limited to a six-week period.
[5] Husband's counsel argued at the final hearing that there could be no lost wages because the husband lost no wages during the marriage; he was unemployed when the parties married.