848 So.2d 1268 (2003)
Edward J. ZANONE, Appellant,
v.
Martha L. CLAUSE a/k/a Martha L. Carpenter, Appellee.
No. 5D02-2931.
District Court of Appeal of Florida, Fifth District.
July 11, 2003.
*1269 Edward J. Zanone, Cape Canaveral, pro se.
No Appearance for Appellee.
SAWAYA, C.J.
Edward Zanone, pro se, appeals the order awarding Brevard County Legal Aid, Inc. $1,500 in attorney's fees for work it performed on behalf of Appellee, the mother of Zanone's child. Zanone argues, and we agree, that the court erred in ordering him to pay fees. Accordingly, we reverse.[1]
The case began as a paternity action filed by Zanone in 1997, almost six years after the birth of the child at issue. The record reflects a number of motions by both parties. A subsequent blood test proved that Zanone is the father of the child. Thereafter, the parties entered into a stipulation as to paternity, support, and visitation. Specifically, they agreed to $187.06 per month as child support plus an additional $37.94 per month towards the $3,403.40 arrearage. The terms of the stipulation were adopted by the trial court and included in the final judgment, which also contained a reservation of jurisdiction *1270 to award attorney's fees for Appellee, payable to Brevard County Legal Aid, Inc.
At the hearing on attorney's fees, Zanone testified that he earns $750 per month as a chaplain doing "mind, body, and spirit training." After paying $230 per month in child support, $115 per month for insurance, and $215 per month in rent, the remainder of Zanone's income is utilized to support his wife and another son. Zanone's income has been so low for the past several years that he has not had to pay income tax. Not only is Zanone's income limited, the assets he owns are limited. For example, he does not own a car. Zanone expressed his frustration at the fee hearing over the length of time the case had dragged on and the fact that he had had to fight to even gain visitation with his son. He noted that Appellee had moved some eight times and had changed her name four times, making it almost impossible for him to locate his son. He filed his petition in 1997, but did not see his son until 1999. Zanone accused the legal aid attorney of tying up the case for years with unfounded pleadings.
After hearing the testimony, including testimony from Appellee's legal aid attorney that he believed the case had been over-litigated and that he had spent 85.24 hours on it because of the complications, the trial judge expressed his disbelief of Zanone's financial affidavit but found that Zanone was in no better financial position than Appellee. The trial judge attributed some fault to Zanone for causing the case to be over-litigated by filing frivolous pleadings, acknowledging, though, that the case was more complicated than the "normal" paternity case. The court found that Zanone had the ability to pay for ten hours of work at $150 per hour and entered judgment accordingly.
The trial court did not cite any specific statutory support for its award of fees; nevertheless, we conclude that the award was made pursuant to either section 57.105 or section 742.045.[2] We will first address section 57.105(1), Florida Statutes, which allows a court to award a prevailing party its attorney's fees under certain conditions. We need not determine under which version of section 57.105 fees were awarded because, under either the pre-1999 amendment or the current version, Zanone was not a "losing party" as is required under section 57.105. To the contrary, he was the prevailing party as he was proven to be the father of the child at issue and obtained a stipulation from Appellee as to paternity, visitation, and support. Just as stated in Guerin v. DiRoma, 819 So.2d 968, 971 (Fla. 4th DCA 2002), "[w]hile the father's conduct may have been unreasonable in some respects, and apparently vexatious, it did not qualify for fees under section 57.105."
If the fee award was not made pursuant to section 57.105, it alternatively may have been made pursuant to section 742.045, which is the statute that authorizes fees in paternity actions. Section 742.045 provides in pertinent part, "The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings." (Emphasis added). In order to award fees under *1271 section 742.045, the trial court must find that the party has the ability to pay those fees. See Starkey v. Linn, 727 So.2d 386, 388 n. 3 (Fla. 5th DCA 1999) ("Obviously section 742.045 is not a prevailing party statute, but rather is based on need and ability to pay.").
In addition to the factors of need and ability to pay, in Rosen v. Rosen, 696 So.2d 697 (Fla.1997), the supreme court authorized the consideration of secondary factors that are related to the length and scope of the litigation and the parties' behavior during litigation when awarding fees in dissolution cases. Rosen is equally applicable to paternity actions. Guerin, 819 So.2d at 971 ("As a paternity case, the right to fees resides in section 742.045, not section 61.16. Nevertheless, because section 742.045 is nearly identical to the text and function of section 61.16, Rosen applies to the consideration of fees under section 742.045."). Zanone's "over-litigation" of his paternity suit would qualify as a factor to be considered in awarding fees under section 742.045. This factor does not, however, abrogate the requirement that Zanone have the ability to pay. See St. Pierre v. Greenberg, 697 So.2d 218, 219 (Fla. 4th DCA 1997) ("In assessing attorney's fees against a party, a trial court may consider that party's willful refusal to comply with an existing order if that conduct made further litigation necessary for enforcement. In doing so, however, the trial court must still consider the need of the movant and the ability of the recalcitrant party to pay the movant's fees.") (citations omitted). Thus, we must first determine whether the primary factors of need and ability to pay were demonstrated before any consideration may be given to Zanone's "over-litigation" of his case.
Despite the fact that the trial court's order recites the conclusory finding that Zanone had the ability to pay the fee award, the record before us does not support that conclusion. The trial court specifically found that Zanone was not in any better position financially than Appellee and expressed doubt whether Zanone could live on the amount of money reflected in his financial affidavit and testified to by Zanone. Then, however, without making any findings as to any amount it was imputing to Zanone and without finding that Zanone was underemployed, the court imposed the fee order, presumably imputing some additional income to Zanone that was not evidenced at the hearing. In Zubkin v. Zubkin, 823 So.2d 870 (Fla. 5th DCA 2002), this court described what was necessary to properly impute income:
A trial court may only impute income to a party who is voluntarily unemployed or under-employed. See Walker v. Walker, 719 So.2d 977, 980 (Fla. 5th DCA 1998); § 61.30(2)(b), Fla. Stat. (2001). The imputation must be supported by specific findings of fact indicating the amount and source of the imputed income. See Woodard v. Woodard, 634 So.2d 782, 783 (Fla. 5th DCA 1994).
Id. at 871. No such findings were made in this case.
Because there was no basis for concluding that Zanone had the ability to pay, and indeed the court's own comments refute any such conclusion, the fee award in the instant case cannot be upheld under section 742.045.
We conclude that the fee award is not sustainable under either statute and must therefore be reversed.
REVERSED.
THOMPSON and MONACO, JJ., concur.
NOTES
[1] We note, parenthetically, that Appellee did not file a brief in these proceedings.
[2] We have thoroughly reviewed the record, including the trial court's order, and there is no express finding by the trial court of bad faith on Zanone's part such that the award of fees would be sustainable as an exercise of the trial court's inherent authority to punish bad faith conduct pursuant to Moakley v. Smallwood, 826 So.2d 221 (Fla.2002), and Bitterman v. Bitterman, 714 So.2d 356 (Fla.1998).