THOMPSON, J.
B.S. (“mother”) appeals the trial court’s order terminating her parental rights to two of her four children, L.M. and S. S.[1] We affirm.
The mother contends that the trial court’s failure to rule within a reasonable time resulted in a violation of her liberty and due process interests. See Lewis v. Department of Health and Rehabilitative Services, 670 So.2d 1191, 1194 (Fla. 5th DCA 1996). Although Rule 2.050(f), Florida Rules of Judicial Administration, imposes a duty on every judge to rule upon and announce an order or judgment within a reasonable time, there is no bright-line demarcation of what is a reasonable time. Tunnage v. Bostic, 641 So .2d 499 (Fla. 4th DCA 1994). When addressing delays in rulings, it must be determined whether there is any conflict or inconsistency between the court’s findings at the time of trial and the ultimate judgment, and whether the court’s findings are supported by trial evidence. See Florida Air Academy v. McKinley, 688 So.2d 359 (Fla. 5th DCA 1997) (holding that employer was not entitled to new trial where there was a 15-month delay between trial and the entry of judgment, and there was no conflict or inconsistency between judge’s statements and later findings). In the instant case, there was no conflict between the findings at trial and the findings in the judgment. Furthermore, the delay in rendition of the judgment in the instant case was due to numerous stipulations and appeals, rather than neglect by the trial court. Given the procedural history of this case, we conclude that the trial court resolved this case in a reasonably timely manner.
The mother also contends that the department failed to prove that termi *1040 nation was in the children’s manifest best interests because the children have special needs, making them unlikely to be adopted. The trial court found that it was unlikely that the children would remain in long-term foster care, a conclusion that is supported by the evidence. Emily Garten, S.S.’s former therapist, testified that she did not see any reason why S.S. would not be adopted. Family Services counselor Hortensia Ocasio also testified that S.S. and L.M. could be adopted. There was no evidence that the children would not be adopted because they have special needs. The trial court also found that the children had demonstrated the ability to form bonds with substitute care givers and would have a stable and permanent family relationship as a result of termination of parental rights. Although there was testimony that S.S. and L.M. suffered from severe emotional and behavioral problems,[2] there was also testimony that they had improved while in their respective placements. Garten testified that S.S. had asserted that she wanted to live in a home with a “mommy and daddy.” Moreover, Garten testified that S.S.’s progress showed she would be able to form a healthy relationship with a new family. Behavioral analyst Laura Mann testified that L.M. required placement in a two-parent home in which one parent would be able to stay home and care for L.M. Additionally, the trial court noted that the guardian ad litem recommended that parental rights be terminated.
Finally, the mother contends that termination was not the least restrictive means of protecting the children because there were two relatives willing and able to take the children in a long-term placement situation. See Department of Health and Rehabilitative Services v. M.B., 701 So.2d 1155, 1163 (Fla.1997) (holding that the department must also prove by clear and convincing evidence that termination is the least restrictive means of protecting the child from serious harm). One of the relatives the mother suggested never contacted the department, and no home study was conducted on that relative’s home. The other relative, Latasha Brown, did not receive a positive home study by the department. Foster care counselor Vanessa Velez testified that Brown’s home study was negative in part because there were ambiguities about who resided in the home. Velez testified that Brown, only 23 years old, lived in a cluttered, three-bedroom home. Two children slept in a bedroom that had mattresses on the floor and broken dressers. A baby slept in Brown’s room, and a cousin slept in the third bedroom. Velez testified that there was a half-filled swimming pool in the yard with no fence surrounding it. At the time of the home study, Brown, who had a lengthy arrest record, was unemployed. Velez testified that Brown had been arrested for aggravated battery on a pregnant female, aggravated battery, assault with a deadly weapon with an intent to kill, battery on a law enforcement, larceny, and probation violations. Furthermore, Brown admitted that her own children had been removed by the department at one time, but subsequently were returned. Brown testified that she wanted custody of L.M. and S.S. because she loved them. Brown stated that she had taken care of the children before they went into state’s custody, but *1041 was incarcerated at the time the department took custody of the children. Although a negative home study may not necessarily preclude a trial court from placing a child in that home, see Department of Children and Families v. T.L., 854 So.2d 819 (Fla. 4th DCA 2003), we conclude that there was clear and convincing evidence that Brown’s residence was not a suitable placement for the children.
AFFIRMED.
PETERSON and TORPY, JJ., concur.

. On 14 November 2002, the mother filed a motion to relinquish jurisdiction as to the appeal regarding her two children, T.S. and R.S. so that they may be adopted. An adoption hearing for T.S. and R.S. is set for mid-December. The mother wishes to proceed on the appeal regarding the termination of parental rights for the two children with special needs, S.S. and L.M.

. S.S.'s former therapist testified that S.S. had multiple problems in school, including defiance, acting out sexually, and urinating on the floor. Garten testified that S.S's behavior had improved since her last placement. There was testimony that L.M. exhibited troublesome behaviors in the school environment, but not at home. L.M., who continued to have angry outbursts, had been expelled from two day camps and had attempted to stab two residents and a staff member.