IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

GLENN ROBERT BROGA,

     Appellant,

v.

LINDA MARIE BROGA,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-1364

Opinion filed April 15, 2015.

An appeal from the Circuit Court for Leon County.
Karen Gievers, Judge.

Emilian "Ian" Bucataru, Tallahassee, for Appellant.

Marilyn K. Morris, Tallahassee, for Appellee.


WOLF, J.

The former husband raises nineteen issues on appeal.[*]   We find three have

merit and one other warrants brief discussion.  First, the trial court's failure to

specifically address the availability of jobs for which appellant was qualified prior

_____

[*] There are few, if any, cases that merit raising nineteen issues on appeal.  It is the
job of competent appellate counsel to select and raise only meritorious issues on
appeal.  Failure to adequately perform this function wastes the court's time and
runs the risk of the court overlooking meritorious issues.

to imputing income to him constituted error. Second, we find no error in the trial court's failure to decrease the amount of child support proportionately as each child reaches majority because the child support guidelines do not require that the reduction be made on a proportionate basis. However, we briefly discuss this issue to clarify prior case law from this district. Third, the trial court erred in failing to make findings of fact regarding the necessity, cost, and availability of life insurance to the former husband to secure payment of child support. We, therefore, reverse and remand as to that issue without further discussion. See Gazaleh v. Reeves, 940 So. 2d 1200, 1201 (Fla. 1st DCA 2006). Finally, the trial court improperly double-counted the 529 College Savings Plan valued at $2,181.82 by adding it to the husband's assets as an independent asset when it was already included in another account awarded to the husband. We, therefore, require the trial court to readdress the equitable distribution plan to rectify this error. It is unnecessary for us to further address that issue.

## I. GENERAL FACTS

The former wife filed a petition for dissolution of marriage on July 3, 2012. The parties' marriage lasted 21 years and there were three children born of the marriage.

After a full hearing, the trial court entered a final judgment of dissolution of marriage. Pertinent to the issues to be discussed within this opinion, the trial court

imputed an annual income of $80,000 to the former husband based on the testimony of the former wife's forensic economics expert. The specific testimony and findings of the trial court in this regard are discussed in detail in the next section on imputation of income.

The trial court's amended final judgment also outlined a reduction of the child support obligation of the former husband as each child turns 18. It stated, "At the termination of the oldest child's support, the reduced support amount for the two youngest will be $825.71. When the first and second child's support terminates, the reduced support amount for the remaining child will be $538.17." However, the court also noted in its amended final judgment that "[t]he child support for each child is one-third of the total monthly amount."

## II. CHALLENGES TO IMPUTATION OF INCOME

"Imputing income is a two-step analysis: (1) the determination of whether the parent's underemployment was voluntary; and (2) if so, the calculation of imputed income." Cash v. Cash, 122 So. 3d 430, 434 (Fla. 2d DCA 2013) (citations omitted). The former husband argues (A) the trial court did not make the required findings regarding the voluntariness of his unemployment, and (B) the trial court did not make the required findings concerning the amount of income imputed, which the former husband also claims was not supported by competent substantial evidence.

3

## A. Voluntariness

Appellant's arguments as to the findings and evidence concerning the voluntariness of his unemployment border on the spurious. The court specifically found, "By choice, Mr. Broga is not now presently working at any job." The trial court also found that the former husband's testimony regarding his unsupported "claim of applying for work" and plans to obtain his bachelor's degree were "neither realistic nor credible." The record is replete with evidence to support these findings.

## B. Amount of Income Imputed

Florida's child support statute, section 61.30(2)(b), Florida Statutes (2012), provides that "[m]onthly income shall be imputed to an unemployed or underemployed parent if such unemployment or underemployment is found by the court to be voluntary on that parent's part." If the court finds that the parent's unemployment or underemployment is voluntary, "the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community if such information is available." § 61.30(2)(b), Fla. Stat. "For purposes of alimony awards, courts reviewing imputation of income have applied the same factors as those applied to imputing income for child support." Gray v. Gray, 103 So. 3d 962, 967 (Fla. 1st DCA 2012) (citation omitted).

4

Because of the uncertain nature of future employment, we have required particularized findings regarding work history, occupational qualifications, and the current job market in the community to support the imputation of income. See Rabbath v. Farid, 4 So. 3d 778, 782 (Fla. 1st DCA 2009). Failure to make these findings results in reversal. Griffin v. Griffin, 993 So. 2d 1066, 1068 (Fla. 1st DCA 2008).

Here, while there is no dispute concerning the former husband's past work history, reliance on this factor alone is insufficient to impute income. Freilich v. Freilich, 897 So. 2d 537, 544 (Fla. 5th DCA 2005); Torres v. Torres, 98 So. 3d 1171, 1172 (Fla. 2d DCA 2011). The evidence of (1) the former husband's occupational qualifications and (2) the prevailing earning level in the community is somewhat sparse and conflicting. Without these factual findings, we do not know how the trial court weighed the evidence and credibility of the witness who presented it.

*1. Occupational Qualifications*

The former wife's expert, forensics economist Dr. Long, testified that the former husband is a corporate pilot and that corporate pilots can earn between $80,000 and $120,000 annually plus benefits. She also testified that the former husband would earn less as a contract pilot and presently was unqualified to be a commercial pilot because of his lack of a college degree.

In Dr. Long's opinion, however, the former husband should have been able to find a new job relatively quickly: "[G]iven [the former husband's] experience and the fact he's already got 9,000 [ ] commercial pilot [hours] as well as the type of jets the corporate pilots fly, he should be able to get one in a very reasonable period of time." In Dr. Long's opinion, the former husband could obtain a secure position providing the same level of earnings and benefits if he remained a corporate pilot.

The former husband correctly notes, though, that Dr. Long was unaware of his specific qualifications as a pilot. For example, Dr. Long testified that she did not know whether the former husband was qualified to fly planes internationally, which was required for the more lucrative available positions. Dr. Long also testified that she did not know which planes the former husband was licensed to fly in general. Though Dr. Long was able to testify as to the average salary of corporate pilots, between $80,000 and $120,000 annually, she was unable to testify regarding current openings for which the former husband was actually qualified.

The former husband testified extensively concerning his lack of qualifications on certain types of airplanes and the lack of available corporate pilot positions in Tallahassee.

In the amended final judgment, the trial court noted Dr. Long's testimony concerning salaries for corporate, commercial, and contract pilots. The court also

6

mentioned Dr. Long's testimony concerning the availability of at least two job openings in Florida. The court, however, did not specifically address the former husband's qualification for those positions. While the trial court was not required to accept the former husband's testimony, specific findings supported by competent substantial evidence concerning qualifications and the relevant employment community were necessary to impute income to the former husband.

### 2. Prevailing Earning Level in the Community

Where a finding of voluntary unemployment or underemployment is made, section 61.30(2)(b) states that the trial court is to determine the parent's employment potential and probable earnings "based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community." "Thus, the prevailing income 'in the community,' not income that could have been earned from a relocation, is to be used in establishing the amount of imputed income." Stebbins v. Stebbins, 754 So. 2d 903, 909 (Fla. 1st DCA 2000) (holding that the trial court's determination that the former husband, an engineer, was underemployed because he did not expand his job search to include positions in Louisiana, Texas, and Georgia was improper); see also Owen v. Owen, 867 So. 2d 1222, 1223-24 (Fla. 5th DCA 2004) (noting that expert testimony establishing the prevailing earnings level for a particular degree does not constitute evidence sufficient to impute that amount of income for child support purposes).

7

Here, the former wife's expert testified that the average salary as a corporate pilot is between $80,000 and $120,000 a year. However, the expert did not testify whether those average salaries were average salaries of corporate pilots in *Florida*. Rather, she testified that she had found her information from various websites, including findapilot.com and flycontracts.com.

While the former husband is a pilot, and therefore his job will necessarily include travel, it should be noted that section 61.30(2)(b)(1)(b) requires that due consideration be given to the parties' time-sharing schedule. Here, the trial court ordered 50/50 time sharing of the children between the parties, "with the rotating week beginning on Monday afternoon, December 23, 2013, with Wednesday mid-week overnight with the other parent." As noted by the former husband, if the court imputes income to him based on jobs that are only available outside of the Tallahassee area, his time-sharing schedule will be forced to change.

While it may be appropriate to expand the geographic area of the "community" in which the former husband works because of the travel inherently required for his job, pursuant to section 61.30(2), the court should specifically address what is the appropriate community based on the circumstances of this case and the prevailing earning levels within this community prior to imputing income to the former husband.

In summation, while there were sufficient findings and competent substantial evidence of the former husband's prior earnings, the same cannot be said regarding the former husband's occupational qualifications and the prevailing earning levels for similar positions within the relevant community. Thus, we reverse and remand so that the trial court may further address imputation of income.

### III. PROPORTIONATE REDUCTION OF CHILD SUPPORT

The former husband asserts the trial court abused its discretion because it did not decrease the child support obligation proportionately as each child reaches the age of majority. We find no merit in this assertion but briefly discuss the issue to address the continued viability of this court's opinion in Evans v. Evans, 443 So. 2d 235, 235-36 (Fla. 1st DCA 1983).

Child support is not required to decline proportionately as each child reaches the age of majority. Section 61.13(1)(a)(1), Florida Statutes (2012), only requires that child support orders provide "[f]or child support to terminate on a child's 18th birthday" and "[a] schedule, based on the record existing at the time of the order, stating the amount of the monthly child support obligation for all the minor children at the time of the order and the amount of child support that will be owed for any remaining children after one or more of the children are no longer entitled to receive child support." § 61.13(1)(a)(1)(a)-(b), Fla. Stat. Additionally, it should

9

be noted that in viewing the child support guidelines, "as the number of children subject to child support at a set income level decreases, the amount of child support required does not decrease on a pro rata basis." Lehman v. Dep't of Revenue ex. rel. Lehman, 946 So. 2d 1116, 1119 (Fla. 4th DCA 2006).

For example, here, the lower court ordered $2,340 of child support to the parties for their three children. The former husband was ordered to pay $938 of that amount, or roughly 40%.

Once one child reaches the age of majority, the parties will only be required to support two children. According to the child support guidelines worksheet, parties who pay $2,340 of child support for 3 children will only have to pay $1,868 for 2 children. § 61.30(6), Fla. Stat. The court ordered the former husband to pay $825.71 for 2 children, or roughly 44% of the child support.

Likewise, when the second child reaches the age of majority, the parties will only have to support one child. The child support guidelines indicates that the child support for one child will be $1,200. § 61.30(6), Fla. Stat. The former husband was ordered to pay $538.17 for 1 child, or, again, roughly 44%.

Based upon these numbers, the lower court's calculation of child support for the former husband as the children reach the age of majority, while not proportionate, properly followed the child support guidelines.

To support his allegation that child support should decrease proportionately as each child reaches the age of majority, the former husband cites to <u>Evans v. Evans</u>, 443 So. 2d 235, 235-36 (Fla. 1st DCA 1983), in which this court did hold that "child support for the benefit of the parties' minor children should be reduced proportionately as each child reaches majority, marries, or dies." However, the child support guidelines were not added to the Florida Statutes until 1987. <u>In re Amendments to Rules of Civil Procedure</u>, 536 So. 2d 974 (Fla. 1988). Therefore, this court in <u>Evans</u> did not have the child support guidelines to rely on in making its determination in 1983. As a result, <u>Evans</u> no longer reflects the accurate law.

In addition, some confusion is caused by the trial court's statement in the final judgment that "[t]he child support for each child is one-third of the total monthly amount." Nothing in the statute supports a determination that any portion of the support obligation belongs to an individual child. Such a notion is inconsistent with the statutory language and the reality that at certain times any set percentage amount of support will be needed for a particular child. As noted, such a notion is inconsistent with the guidelines. We, therefore, strike that sentence from the order of the trial court.

We, therefore, REVERSE and REMAND as indicated herein for further proceedings consistent with this opinion. In all other respects, the decision of the trial court is AFFIRMED.

11

LEWIS, C.J., and ROBERTS, J., CONCUR.