FORST, J.
Appellant Marcie Koscher (“the wife”) and her ex-husband Appellee Daniel Koscher (“the husband”) have both appealed aspects of the final judgment of dissolution of their marriage. As discussed below, we reverse and remand for further proceedings with respect to the trial court’s failure to impute income to the husband, the calculation of alimony to be paid to the wife, and the payment of the wife’s attorneys’ fees.[1]
Background
The parties were married for over thirty years. At the time of the dissolution proceedings, they had two adult daughters and shared six properties. The husband was last employed in 2012, though he received severance payments until September 2013. In the last four years of employment prior to his termination, the husband had an annual compensation between- $450,000 and $1.13 million (an average of nearly $850,000/year).[2]' The parties agreed that the wife suffers from a number of significant health problems and had not worked during or after the marriage.
The husband testified that he was trying to start his own company and was not pursuing other employment options, although a couple of projects with which he was involved had been commenced during the couples’ pre-dissolution separation. He added that it was his intent to restore himself to an “affluent level of income” after completion of the dissolution proceedings, and expected an average annual income of $1.9 million.
In light of the husband’s unemployment at the, time of the marriage dissolution, the wife requested that the trial court impute income to the husband when calculating the alimony payments to be made by the husband to the wife. Although it found that the husband was voluntarily unemployed and not engaged in a diligent effort tp obtain employment, the trial court nonetheless refused to impute any income to the husband. In explaining this decision, the trial court noted that it did not find *740 evidence showing what the imputed income should be.
The trial -court further found that, based on the length of the marriage and the wife’s need, she was entitled to permanent periodic alimony. The husband also conceded this point. The trial court concluded that the wife established that “the parties enjoyed an elite, affluent, upper level, top shelf,, high-end but not extravagant standard of. living.” It also credited the husband’s financial affidavit, which showed that the. - couple “historically spent $30,000.00 per month on living expenses.” The trial, court additionally noted that the wife’s most recent financial affidavit stated hér monthly expenses were $17,000 per month. It found the husband was “deliberately unemployed” and the parties estimated their collective net worth to be between $3.7 and $3.8 million.
Based on these figures and, as noted above, no imputation of income to the husband, the trial court set “the actual amount [of permanent periodic alimony] which should be paid” to the wife as $11,000 per month. However, the trial court ordered that the wife receive only $100 per month in nominal alimony, because the husband’s lack of a salary impeded his present ability to pay alimony. The trial court noted that when the day came for the husband to start “paying the $11,000 a month on a monthly basis, there [would] likely be a sizable arrearage prob-lém that’s accumulated that [he] would have to'address.” However, upon the husband’s motfon for rehearing, the trial court amended the final judgment and omitted this reference to arrearages. Thus, for all intents and purposes, the alimony awarded was $100 per month.
The wife sought attorneys’ fees. Her motion was denied by the trial court, which reasoned that both the wife and the husband had similar abilities to pay their attorneys.
Analysis
A. The Imputation of Income to the Husband
“In considering the imputation of income, the standard of review is whether the trial court’s determination is supported by competent, substantial evidence.” Heard v. Perales, 189 So.3d 834, 836 (Fla. 4th DCA 2015) (quoting Schram v. Schram, 932 So.2d 245, 249 (Fla. 4th DCA 2005)). However, in the instant case, the trial court refused to impute income. “The framework the court uses to determine whether imputation is necessary and, if so, how to calculate an amount is an issue of law we review de novo.” Lafferty v. Lafferty, 134 So.3d 1142, 1144 (Fla. 2d DCA 2014).
A trial court may impute income “if a party is earning less than he could, based on a showing that he has the capability of earning more by the use of his best efforts.” Freilich v. Freilich, 897 So.2d 537, 540 (Fla. 5th DCA 2005) (quoting Alpert v. Alpert, 886 So.2d 999, 1001 (Fla. 2d DCA 2004)). “In imputing income, the trial court engages in a two-step process. First, the court must conclude that the termination of income was voluntary.” Heard, 189 So.3d at 836; accord Schram, 932 So.2d at 249. Here, the husband’s termination of income was involuntary—he was terminated from his job and received severance for over a year. This leads to the second inquiry: “whether the subsequent unemployment ‘resulted from the spouse’s pursuit of his own interests or through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received.’ ” Heard, 189 So.3d at 836 (quoting Schram, 932 So.2d at 249-50). A spouse is not spared from the obligation to be “diligent in finding replacement in *741 come,” Lafferty, 134 So.3d at 1144, even if that spouse is initially involuntarily unemployed, if the spouse is physically and mentally capable and otherwise employable.
“The spouse claiming income should be imputed to the unemployed or underemployed spouse bears the burden of showing both employability and that jobs are available.” Durand v. Durand, 16 So.3d 982, 985 (Fla. 4th DCA 2009). In addressing the issue, “the trial court must set forth factual findings as to the probable and potential earnings level, source of imputed and actual income, and adjustments to income.” Schram, 932 So.2d at 249. The trial court “may only impute a level of income supported by the evidence of employment ' potential and probable earnings based on history, qualifications, and prevailing wages.” Id. at 250.
In the case at hand, while there is no dispute the husband was involuntarily terminated from his last job, his continued unemployment was voluntary, as he did not make any diligent efforts to seek comparable employment. ’ In Vazquez v. Vazquez, 922 So.2d 368 (Fla. 4th DCA 2006), the husband applied for several jobs and was interviewed three times, and this Court found that was still not enough to show a good faith effort in seeking comparable employment. Id. at 371-72. Here, there was no evidence the husband even applied for a job, let alone interviewed for one. Instead, the husband decided to start his own business, and chose to wait until the divorce was finalized before making an effort to earn an income (“I’m in limbo. I was waiting for the Judge to resolve this case.”).[3] Although his initial unemployment was involuntary, the husband had not worked for nearly three years as of the date of the dissolution, and had not received severance payments for about a year and a half. Thus, the trial court properly found that, at the time of the final dissolution, the husband was voluntarily unemployed.
“A court may impute income where a party is willfully earning less and the party has the capability to earn more by the use of his best efforts.” Schram, 932 So.2d at 249. Accordingly, the trial court should have performed the necessary steps to calculate an actual value for the imputed income. As noted above, the husband’s income during his last four years of employment averaged nearly $850,000 a year. He also admitted a lack of effort to obtain employment in the three years since his termination. On remand, the trial court should take any additional evidence it deems necessary to'determine the amount of income it should impute to the husband, “supported by the evidence of employment potential and probable earnings based on history, qualifications, and prevailing wages.” Id. at 250.
B. The Trial Court’s Alimony Award
The wife argues the trial court’s award of $100 per month in alimony is contradicted by the unchallenged evidence presented at trial and is insufficient because it forces her to deplete her marital assets to maintain her standard of living. Additionally, she argues the future award of $11,000 was an abuse of discretion because it did not cover her basic needs and was not supported by the evidence in the record.
This Court reviews an alimony award with the abuse of discretion stan *742 dard. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980); Lightcap v. Lightcap, 14 So.3d 259, 260 (Fla. 3d DCA 2009). “[W]here the record does not contain substantial, competent evidence to support the trial court’s findings regarding the amount of alimony awarded, the appellate court will reverse the award.” Vitro v. Vitro, 122 So.3d 382, 387 (Fla. 4th DCA 2012) (quoting Wabeke v. Wabeke, 31 So.3d 793, 795 (Fla. 2d DCA 2009)).
“[W]hen one party is entitled to permanent periodic alimony but the other spouse has no current ability to pay, the trial court should award a nominal sum of permanent periodic alimony, which will give the court jurisdiction to reconsider the award should the parties’ financial circumstances change.” Schmidt v. Schmidt, 997 So.2d 451, 454 (Fla. 2d DCA 2008) (emphasis added). The purpose of imputed income is to determine the amount that a spouse is able to earn, above and beyond what the spouse actually earns. Nominal alimony is therefore inappropriate in a situation like here, where the paying spouse has the ability to pay more if he/she was to earn the amount the court has determined could be earned through diligent efforts.
Upon remand, the trial court is to impute income to the husband. It must then revisit the amount of permanent periodic alimony to be awarded to the wife, commencing with the date of initial dissolution of marriage. See Freilich, 897 So.2d at 539 n. 1 (“[T]he trial court may have to reconsider the amount of alimony ... awarded after the amount of imputed income is recalculated.”). That amount may be more than the,$11,000 per month; it certainly will be more than $100 per month. The trial court must make factual findings relative to all of the factors set forth in section 61.08(2), Florida Statutes (2016), in determining the proper amount of alimony. Watford v. Watford, 191 So.3d 993, 994 (Fla. 4th DCA 2016); Ondrejack v. Ondrejack, 839 So.2d 867, 870 (Fla. 4th DCA 2003). One of these factors is “[t]he earning capacities, educational levels, vocational skills, and employability of the parties.” § 61.08(2)(e), Fla. Stat. Another factor is “[t]he financial resources of each party, including the nonmarital and the marital assets and liabilities distributed to each.” § 61.08(2)(d).
C. The Wife’s Request for Attorneys’ Fees and Costs
“The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney’s fees .,, to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings and appeals.” § 61.16(1), Fla. Stat. (2015). In addition to need and ability to pay, a trial court may consider other factors, including the parties’ behaviors and earning potential. Zanone v. Clause, 848 So.2d 1268, 1271 (Fla. 5th DCA 2003) (citing Rosen v. Rosen, 696 So.2d 697 (Fla.1997)); LaMore v. LaMore, 553 So.2d 1319, 1320 (Fla. 4th DCA 1989). “In deciding whether an award of attorney’s fees is justified, a trial court may impute income to a voluntarily unemployed or voluntarily underemployed party.” Freilich, 897 So.2d at 541 (quoting Smith v. Smith, 737 So.2d 641, 643 (Fla. 1st DCA 1999)).
The trial court denied the wife’s request for attorneys’ fees because it found the parties to be equal based on their net worth and income. However, there is no evidence of the wife having any income and the husband conceded she was unemployable for medical reasons. On the other hand, the evidence presented showed that the husband was an experienced business executive with significant earning po *743 tential. Therefore, the parties were not in similar circumstances. As this case is being remanded for the trial court to impute income to the husband, the trial court must then revisit the wife’s request for attorneys’ fees and costs, balancing the wife’s need for funds against the husband’s recalculated ability to pay these fees and costs with his imputed income. See Freilich, 897 So.2d at 544 (“When the proper amount of imputed income is determined by the court, that amount may be factored into the calculations regarding the amount of attorney’s fees to be awarded.”).
Conclusion
We reverse and remand for the trial court to determine an amount for the income to be imputed to the husband. This will also entail a recalculation of the alimony to be awarded and a revisiting of the wife’s request that the husband pay her attorneys’ fees and costs.
In a situation where one spouse is fully capable and qualified for employment and the other is not, and the employable spouse is deliberately unemployed, an award of nominal alimony is contrary to the alimony statute. Although it is impossible to get blood from a turnip, it is not impossible to require monthly alimony payments from a former spouse who is employable and has a net worth in the neighborhood of two million dollars.

Affirmed in part, Reversed and Remanded in part.

CIKLIN, C.J. and CONNER, J.,. concur.

. We affirm without discussion the other issues raised by the wife on appeal (the trial court’s failure to include $186,000 that the husband removed from his retirement fund in the calculation of the equitable distribution award and the trial court’s refusal to. award retroactive alimony to the wife) and by the husband in his cross-appeal (addressing the valuation of the wife’s jewelry),'

. The husband also was paid $33,333.00 per month in severance for fifteen months following his June 2012 termination.

. We do not mean to suggest that self-employment cannot ever be sufficient employment to avoid an attempt to impute income. But here, where the self-owned business was not seeking to operate as an actual business yet, the fact that the husband "worked” for himself is not enough; "