DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AMANDA SHEFF,**
Appellant,

v.

**MICHAEL KEVIN SHEFF,**
Appellee.

No. 4D2025-0673

[June 3, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Lorena V. Mastrarrigo, Judge; L.T. Case No. 062023DR003055AXXXCE.

Jonathan Thomas Mann and Robin I. Bresky of Schwartz Sladkus Reich Greenberg Atlas LLP, Boca Raton, for appellant.

Nancy A. Hass of Nancy A. Hass, P.A., Hollywood, for appellee.

PER CURIAM.

The wife appeals a final judgment of dissolution of marriage, arguing the trial court erred in (1) finding the husband did not have the ability to pay durational alimony, (2) finding the wife did not have a need for durational alimony, (3) imputing income to the wife, (4) finding the wife in contempt for violating an agreed order regarding the children's cell phones, (5) denying the wife's request for attorney's fees, and (6) denying the wife's request to clarify an order reserving jurisdiction on the husband's obligation to obtain life insurance to secure his child support payments. We affirm issues 1 through 5 and write only to address issue 1. We dismiss issue 6 for lack of jurisdiction.

The parties married in 2009. Two children were born during the marriage. In 2023, the wife filed a petition for dissolution of marriage. The husband filed a counterpetition.

At the time of the November 2024 final hearing, the husband, age fifty-nine, had worked for a global credit card company for approximately eight years. The husband's initial position was senior vice president of all

accounts, followed by senior vice president of global strategy, and then vice president of chief of staff. On November 6, 2023, the husband's position of chief of staff was eliminated. On January 1, 2024, he began a six-month temporary assignment on a special project in the global partnerships and segments team. The company extended the assignment for an additional six months, ending on December 31, 2024.

It was unrefuted in the record that the husband's position at the company would terminate on December 31, 2024—the month following the final hearing. The parties agreed to this in a pretrial stipulation, and the husband testified to this during the hearing. The husband had not been offered any further or new positions at the company. The husband did not expect to get another extension working in the global partnerships and segments team.

The husband testified he had reached out to friends, colleagues, and human resources, but was unsuccessful in securing another position at the company. The company was downsizing, and his background and skill set did not align with the job requirements for the few open positions. The husband expressed concern about his ability to earn anywhere near what he had earned in the past.

A company representative confirmed that the husband's special assignment was set to terminate on December 31, 2024, and that no new assignment had been offered. The wife agreed there was no evidence that the husband would have a job with the company after December 31, 2024.

The husband's CPA ascribed an income to the husband of $62,350 per year based on the U.S. Census Bureau's median earnings. In contrast, the wife did not present any evidence of the husband's potential earning levels or job prospects. Instead, she elicited testimony only about the husband's past earnings. During his employment with the company, the husband earned a base salary of $300,000 to $305,000 plus bonuses and stocks. The parties' tax returns showed the husband earned $706,088 in 2020, $663,762 in 2021, $707,900 in 2022, and $627,557 in 2023.

The trial court entered a final judgment for dissolution of marriage, awarding the wife $7,000 a month in temporary alimony, retroactive to July 2023 through December 2024. The trial court denied the wife's request for durational alimony, finding that the husband did not have the ability to pay alimony after December 31, 2024, as he would no longer be employed as of January 1, 2025. The trial court also found that the wife did not have a need for durational alimony, based on her receiving over $1 million under the equitable distribution as well as her imputed income.

After the trial court denied her motion for rehearing, the wife appealed.

The wife argues the trial court's finding that the husband had no ability to pay alimony after December 31, 2024, was based on impermissible speculation and not competent substantial evidence. The wife further argues that the evidence showed the husband earned $600,000 to $700,000 a year.

"A trial court's alimony determination is reviewed using an abuse of discretion standard." *Addie v. Coale*, 120 So. 3d 44, 46 (Fla. 4th DCA 2013).

In determining whether to award alimony, the trial court must make a factual determination as to need and ability to pay. § 61.08(2)(a), Fla. Stat. (2023). The party seeking support has the burden of proving his or her need and the other party's ability to pay. *Id.*; *see also Wallace v. Wallace*, 418 So. 3d 148, 153 (Fla. 4th DCA 2025) ("The party seeking alimony has the burden to prove his or her financial need and the *other party's ability to pay*.") (citation omitted) (emphasis added).

In the instant case, the wife did not meet her burden of proving the husband's ability to pay. It was unrefuted that the husband's employment would end on December 31, 2024—a little more than a month after the final hearing—and that the husband had no job prospects in sight. Indeed, in the joint pretrial stipulation, the wife agreed that the husband's current assignment was ending on December 31, 2024. The wife also agreed in the pretrial stipulation that the company had not offered the husband further or new positions commencing after December 31, 2024.

Significantly, the only evidence of the husband's income after December 31, 2024, was presented by the husband's CPA. The CPA imputed income to the husband in the amount of $62,350 per year, based on the U.S. Census Bureau's median earnings.[1] The wife did not present any witness, such as a vocational expert, to testify about the husband's qualifications, employability, available jobs, and prevailing earning level in the community. The wife did not even question the husband about what type of jobs he was looking for or his efforts to secure new employment outside

---

[1] Section 61.30(2)(b), Florida Statutes (2023), the child support statute, authorizes the use of the U.S. Census Bureau's median income where "information concerning a parent's income is unavailable" "or a parent fails to supply adequate financial information." Courts have borrowed from this statute in determining the amount to impute for alimony awards. *Freilich v. Freilich*, 897 So. 2d 537, 543 (Fla. 5th DCA 2005).

of the company.

Instead, the wife relies solely on the husband's historic earning levels. However, "[p]ast average income, unless it reflects current reality, simply is meaningless in determining a present ability to pay." *Greenberg v. Greenberg*, 793 So. 2d 52, 55-56 (Fla. 4th DCA 2001) (citation omitted); *see also Sallaberry v. Sallaberry*, 27 So. 3d 234, 236 (Fla. 4th DCA 2010) ("[A] trial court may not impute income to a party based solely on past earning power because past income may not reflect a present ability to pay."); *Warner v. Warner*, 422 So. 3d 1194, 1199 (Fla. 5th DCA 2025) (finding trial court erred in imputing income based solely on past average earnings); *Broga v. Broga*, 166 So. 3d 183, 185 (Fla. 1st DCA 2015) ("[W]hile there is no dispute concerning the former husband's past work history, reliance on this factor alone is insufficient to impute income."); *Freilich*, 897 So. 2d at 544 ("It is error for a trial court to base the amount of imputed income solely on the past earnings . . . ."). Obviously, based on the record before us, because the husband would no longer be employed at the company, he would no longer continue to earn $600,000 to $700,000 a year.

"[T]he trial court 'may only impute a level of income supported by the evidence of employment potential and probable earnings based on history, *qualifications, and prevailing wages.*'" *Inman v. Inman*, 345 So. 3d 320, 322 (Fla. 4th DCA 2022) (emphasis added) (quoting *Koscher v. Koscher*, 201 So. 3d 736, 741 (Fla. 4th DCA 2016)). "The spouse claiming income should be imputed to the unemployed or underemployed spouse bears the burden of showing both *employability and that jobs are available.*" *Durand v. Durand*, 16 So. 3d 982, 985 (Fla. 4th DCA 2009) (emphasis added); *see also Freilich*, 897 So. 2d at 543 (stating that in determining whether to impute income, a court considers "recent work history, occupational qualifications, and prevailing earnings level in the community") (quoting § 61.30(2)(b), Fla. Stat.).

The wife introduced no evidence whatsoever concerning the husband's "qualifications" and "prevailing wages," nor did she present any evidence of his "employability and that jobs are available." The wife's failure to offer any such evidence precludes imputation of income to the husband in a greater amount than that ordered by the trial court. *See Durand*, 16 So. 3d at 985 (reversing the imputation of income to the husband where the husband was terminated from his job, the husband was making efforts to find new employment, and the "[w]ife did not carry her burden because she did not provide evidence that jobs were available"); *Rabbath v. Farid*, 4 So. 3d 778, 784 (Fla. 1st DCA 2009) (finding error in imputing income to the appellant where "[n]o evidence was presented regarding the current,

prevailing earnings level and the potential source(s) or amount of income in the pertinent community"); *Douglas v. Douglas*, 328 So. 3d 1071, 1073 (Fla. 5th DCA 2021) (affirming trial court's refusal to impute income where the husband "offered no evidence of what pay rates and jobs were locally available for which Former Wife was qualified"); *McDuffie v. McDuffie*, 155 So. 3d 1234, 1236-37 (Fla. 1st DCA 2015) (reversing the trial court's decision to impute income to the former wife where the record was "devoid" of any "evidence of the local job market, the area minimum wage, or the type of job the former wife could secure that would pay $10 per hour").

The wife suggests the husband will continue to work at the company, pointing to past extensions he has been given. However, the wife's suggestion is based on pure speculation and conjecture. "In determining a party's income for alimony purposes, a court may not speculate on what might happen in the future but must consider the circumstances that existed at the time of the final hearing." *Inman*, 345 So. 3d at 322. "It is well settled that alimony awards should be based upon current existing circumstances and not on possibilities likely but not yet realized." *LaSala v. LaSala*, 806 So. 2d 602, 604 (Fla. 4th DCA 2002).

Here, the "existing circumstance[]" is the husband's unemployment as of January 1, 2025. Again, the unrebutted evidence was that the husband's employment with the company would end on December 31, 2024, and would not be extended. The wife's claim that the husband would continue employment at the company is a mere possibility, at best.[2] "[M]ere allegations of employability do not constitute competent, substantial evidence for imputing income." *Torres v. Torres*, 98 So. 3d 1171, 1172 (Fla. 2d DCA 2011) (citation omitted) (finding insufficient evidence to impute income to the husband where the wife "merely testified that it was possible that the Husband could work for his previous employer again and he had been paid at least $50,000 by that employer before he quit").[3]

Alternatively, the wife argues the trial court should have at least awarded nominal alimony. "A trial court's decision regarding nominal alimony is reviewed for abuse of discretion." *Zarycki-Weig v. Weig*, 25 So.

---

[2] Not to mention this is in direct contravention of her stipulation that the husband's employment would end on December 31, 2024.

[3] Because we find the husband did not have the ability to pay alimony, we need not reach the merits of the wife's argument that the trial court erred in finding she did not have a need for alimony.

3d 573, 576 (Fla. 4th DCA 2009). We find that, based on the evidence presented, the trial court did not abuse its discretion in declining to award nominal alimony.

"Florida's courts have permitted nominal alimony only in narrow circumstances, where a spouse would be entitled to alimony but for the paying spouse's *temporary* inability to pay, which is *reasonably foreseeable to change in the future*." *Atkinson v. Atkinson*, 429 So. 3d 526, 528 (Fla. 4th DCA 2026) (emphasis added). "In other words, there must presently appear in the record foreseeable circumstances to take place in the future as would at that time support an award of alimony." *Roy v. Roy*, 522 So. 2d 75, 76 (Fla. 4th DCA 1988).

Here, the wife presented no evidence as to the "temporary" nature of the husband's inability to pay, or whether the temporary inability will change in the "reasonably foreseeable" future. This issue suffers from the same deficiency that precluded imputation of a greater amount of income to the husband, that being the wife's failure to present any evidence as to the husband's qualifications, available jobs, and prevailing earning levels. Thus, based on the evidence presented, the trial court did not abuse its discretion in declining to award nominal alimony. *See Zarycki-Weig*, 25 So. 3d at 576 (affirming denial of nominal alimony where "[t]he court gave no indication that it found that the husband's financial situation might change, nor would such a finding be supported by the record").[4]

---

[4] The trial court initially, in its oral ruling, stated:

> I don't think the law tells me now that I can leave the door open. I think in the past you could leave the door open for that, because there was also permanent alimony back then, and that's why that was done, for permanent alimony, to leave the door open. . . . My ruling is she'll get alimony till December 1st of 2024. That's when he will make his last payment based on what we know today.

However, nothing in the written final judgment suggests the trial court misunderstood its authority. The written final judgment states: "The Court does not want to leave the 'door open' on alimony and is not granting a minimal amount of durational alimony." Notably, the final judgment did not state that the court "could not" leave the door open. Rather, the trial court appeared to exercise its discretion and found the evidence did not support an award of nominal alimony. In any event, the wife did not argue in the motion for rehearing or on appeal that the trial court misunderstood its authority to award nominal alimony. *See Atkinson*, 429 So. 3d at 529 n.1 (recognizing the eliminating of permanent alimony did not affect the ability of circuit courts to award nominal alimony). Since this argument was not raised, it is not preserved. *Aills v. Boemi*,

The wife also argues that the trial court abused its discretion as to the husband's obligation to obtain life insurance to secure the child support award. We dismiss this issue for lack of jurisdiction. The trial court has not yet ordered the husband to obtain life insurance. Rather, the trial court reserved jurisdiction on this issue. "A judgment is final for the purposes of an appeal if the judicial labor required has been completed." *Fin. Intern. Life Ins. Co. of New Mexico v. Beta Tr. Corp., Ltd.*, 405 So. 2d 306, 307 (Fla. 4th DCA 1981). Because judicial labor has not yet ended on the issue of life insurance, this issue is not yet appealable. *See Nathanson v. Rishyko*, 140 So. 3d 1054, 1055 (Fla. 4th DCA 2014); *Winkelman v. Toll*, 632 So. 2d 130, 131-32 (Fla. 4th DCA 1994).

In summary, the trial court did not abuse its discretion in finding the husband does not have the ability to pay alimony based on the record before us. The wife's failure to present any evidence of the husband's future ability to pay compels this result and our finding that the trial court did not abuse its discretion. Thus, we affirm the denial of alimony, we dismiss the issue of life insurance for lack of jurisdiction, and we affirm the remaining issues without further discussion.

*Affirmed in part; dismissed in part.*

LEVINE and CONNER, JJ., concur.
SHEPHERD, J., dissents with opinion.

SHEPHERD, J., dissenting in part.

I would reverse the trial court's judgment because it failed to award Former Wife nominal alimony. The majority holds that the trial court was correct in not imposing nominal alimony upon Former Husband because Former Wife failed to present testimony from a competing forensic accountant or other expert to establish Former Husband's earning capacity. That reasoning neglects the wealth of evidence upon which the trial court should have relied to determine it was reasonable that Former Husband may earn substantially more than the census bureau's median income in the future and to safeguard for that eventuality by awarding nominal alimony. This scenario is the reason why courts award nominal alimony and reserve jurisdiction to make necessary adjustments in the future. In addition to ignoring reasons to suppose Former Husband's inability to pay alimony was not permanent, the trial court compounded its error by determining Former Wife did not have a need for alimony based

---

29 So. 3d 1105, 1108-09 (Fla. 2010).

on imputing income to her that is not supported by the evidence.  Thus, I respectfully dissent.

Section 61.08(2)(a), Florida Statutes (2023), states:

> In determining whether to award . . . alimony, the court shall first make a specific, factual determination as to whether the party seeking . . . alimony has an actual need for it and whether the other party has the ability to pay . . . alimony. The party seeking . . . alimony has the burden of proving his or her need for . . . alimony and the other party's ability to pay . . . alimony.

§ 61.08(2)(a), Fla. Stat. (2023).

Nominal alimony "has been generally ordered where the only missing element of one party's [ ] alimony claim is the other party's present ability to pay, *and there is reason to suppose that inability may not be permanent. The award of nominal [ ] alimony is particularly likely where one party historically enjoyed a healthy income which became anemic coincidental to divorce proceedings.*"  23 Fla. Prac., Florida Family Law § 12:13 (2025) (emphasis added).  "Indeed, there is a positive rule of law requiring the award of nominal alimony when the need exists but cannot currently be funded."  *Id.*; *see Schlagel v. Schlagel*, 973 So. 2d 672 (Fla. 2d DCA 2008); *Ayra v. Ayra*, 148 So. 3d 142 (Fla. 2d DCA 2014).

"The standard of review for a trial court's determination of alimony is abuse of discretion."  *Inman v. Inman*, 345 So. 3d 320, 323 (Fla. 4th DCA 2022) (citing *Rabadan v. Rabadan*, 322 So. 3d 660, 661 (Fla. 4th DCA 2021)).

The trial testimony is outlined by the majority.  Here, competent, substantial evidence showed Former Wife had a need for alimony and that Former Husband's inability to pay alimony would not be permanent. Former Husband testified as follows.  He was employed by a large regional bank in mergers and acquisitions for six years before he accepted employment with the global credit card company.  He worked for the company since 2016 and had been working continuously for the company since then.  He was Senior Vice President of all accounts, initially earning a base salary of $300,000 per year.  After approximately three years, he was given the position of Senior Vice President of Global Strategy for another three years until he became Vice President and Chief of Staff in 2022, with a base salary of $305,000.  He received a bonus each year from the company and restricted stock units most years.  He earned $706,088

8

in 2020, $663,762 in 2021, $707,900 in 2022, and $627,557 in 2023. He had earned $600,311 year-to-date as of October 15, 2024. He would receive an additional $63,500 in base salary if he remained employed through December 31, 2024, for a total of $663,811.

The parties stipulated that as of January 1, 2025, Former Husband's employment with the company would end and, although he was actively seeking comparable employment, he had not yet secured a new position. Former Husband's forensic accountant suggested that the trial court should impute income to him of $62,350 per year based on the U.S. Census Bureau's median earnings. The trial court did just that.

The trial court found Former Husband's evidence to be credible. Even accepting that determination, the evidence demonstrates that his earning potential is far greater than $62,350. I disagree with the majority that Former Wife failed to present evidence of his current and historical earning capability for the trial court to consider regarding nominal alimony. Former Wife's failure to provide additional evidence in the form of an expert witness was not dispositive on the issue of nominal alimony. Without speculating, the trial court should have used a common sense approach to evaluate the record evidence because it held competent, substantial proof of Former Husband's earning potential.

Expert testimony is not required for the trial court to determine need for alimony and ability to pay. *See Rodriguez v. Medero*, 17 So. 3d 867, 870 (Fla. 4th DCA 2009) ("The record does not support the trial court's finding that the former wife is voluntarily underemployed and currently capable [of] working full-time. The trial court improperly placed the burden on the former wife to prove her inability to work through expert testimony."); *Iarussi v. Iarussi*, 353 So. 3d 75 (Fla. 1st DCA 2022) (explaining that a trial court can reject an expert's testimony where the testimony conflicts with other evidence).

The trial court should have considered Former Husband's work history and historic income when determining whether nominal alimony should be awarded, but failed to do so. *Nourse v. Nourse*, 948 So. 2d 903 (Fla. 2d DCA 2007), is particularly instructive on this point. In *Nourse*, because the husband was losing his job in three to five years, the wife sought nominal permanent alimony. The district court agreed nominal permanent alimony was required:

> Based on the evidence presented, the trial court's finding that the wife 'will be able to regain some type of employability once the stress of the divorce is concluded' [wa]s not supported by

9

competent, substantial evidence in the record. Therefore, we conclude that the trial court abused its discretion by failing to award at least nominal permanent[5] alimony. We understand the trial court's concerns regarding the husband's future job prospects and the fact that there is a possibility that the wife might be able to return to work. *However, we conclude that the historic incomes of the parties, the length of the marriage, and the wife's potential future needs require an award of at least a nominal amount of permanent alimony.*

*Id.* at 904 (emphasis added).

"[W]hen one party is entitled to [ ] periodic alimony but the other spouse has no current ability to pay, the trial court should award a nominal sum of [ ] periodic alimony, which will give the court jurisdiction to reconsider the award should the parties' financial circumstances change." *Turcotte v. Turcotte*, 122 So. 3d 954, 957 (Fla. 2d DCA 2013) (quoting *Schmidt v. Schmidt*, 997 So. 2d 451, 454 (Fla. 2d DCA 2008)); *see also Lightcap v. Lightcap*, 14 So. 3d 259, 259 (Fla. 3d DCA 2009); *Misiak v. Misiak*, 898 So. 2d 1159, 1160 (Fla. 5th DCA 2005); *Blanchard v. Blanchard*, 793 So. 2d 989, 990 (Fla. 2d DCA 2001) ("[T]he trial court abused its discretion when it failed to award the wife $1 in permanent periodic alimony to reserve her future right to alimony in light of the husband's work history during this long-term marriage."); *Stock v. Stock*, 693 So. 2d 1080, 1082 (Fla. 2d DCA 1997) (affirming reservation of jurisdiction to determine alimony award in the future when the evidence showed "a likelihood that there will be a change in circumstances that would enable the husband to meet his obligation to contribute to the wife's support").

As our supreme court stated in *Diffenderfer v. Diffenderfer*, 491 So. 2d 265, 267 (Fla. 1986): "The potential income may certainly bear on the employee spouse's ability to pay, and as we noted in *Canakaris*, this factor can be determined 'not only from net income, but also net worth, past earnings, and the value of the parties' capital assets.'" (quoting *Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1990), citing *Firestone v. Firestone*, 263 So. 2d 223 (Fla. 1972)).

The bulk of the majority opinion focuses on the propriety of the trial court's imputation of income to Former Husband. I agree that "the trial court 'may only impute a level of income supported by the evidence of

---

[5] We recognize that the Florida legislature effectively eliminated permanent alimony in 2023. However, the ability of circuit courts to award nominal alimony was not affected. § 61.08(1)(a), Fla. Stat. (2023).

employment potential and probable earnings based on *history, qualifications, and prevailing wages.'" Inman*, 345 So. 3d at 322 (emphasis added) (quoting *Koscher v. Koscher*, 201 So. 3d 736, 741 (Fla. 4th DCA 2016)).  I do not dispute the income amount which the trial court ascribed to Former Husband.  However, precisely because the trial court imputed income of only $62,350 to Former Husband—contrary to his earning history and earning capacity—reversal for the imposition of nominal alimony is warranted.

The majority cites *Greenberg v. Greenberg*, 793 So. 2d 52, 55-56 (Fla. 4th DCA 2001), for the proposition that historical income, without a showing of current income, is meaningless in determining ability to pay.  I agree with that proposition.  But historical income is a harbinger of future earning potential.  For that reason, Former Husband's potential future income is far greater than $62,350 annually, and the failure to award nominal alimony is an abuse of discretion.  *See Nourse*, 948 So. 2d at 904 (finding circuit court abused its discretion in failing to award nominal alimony based on the historic incomes of the parties, the length of the marriage, and the wife's potential future needs).

Of course, ability to pay is only one prong of the court's alimony determination.  The trial court must also determine the requesting party's need.  I will address Former Wife's need, which the majority has deemed moot due to its affirmance on the ability to pay issue.

"The standard of review governing a trial court's imputation of income is whether the determination is supported by competent, substantial evidence." *Rodriguez*, 17 So. 3d at 870 (quoting *Brown v. Cannady–Brown*, 954 So. 2d 1206, 1207 (Fla. 4th DCA 2007)).  Here, competent, substantial evidence does not support the amount of income that the trial court imputed to Former Wife and finding that she did not have a need for alimony.

During the majority of the nearly 14-year marriage, Former Wife was not employed.  She maintained the home, primarily cared for the children, took them to doctors' appointments and activities, and home-schooled them during the COVID-19 pandemic.  Former Wife testified she worked part-time at tennis tournaments as a tennis official in 2018 and during this case.  She usually earned $150-165 per day, with the possibility of sometimes being able to secure the higher-paying tennis head referee or chief umpire rate of $190-210 per day.  Former Wife testified that if the tournament day was longer than nine hours, she would be paid time-and-a-half.  However, the undisputed evidence was that those higher-paying positions were granted to more senior tennis officials, and if Former Wife

could obtain those tournament positions, it would be infrequently. She also testified that it was not possible to be hired to work forty hours each week in South Florida as a tennis official. Former Wife also gained part-time work as a substitute teacher and was paid $100 per day, except in the summer months and holidays when school was out. She testified that if she could obtain substitute teaching work five days each week, she would earn $500 per week or approximately $20,000 per year. Former Wife testified that substitute teaching jobs are not available five days a week. Further, as the trial court ordered on shared custody, if she has the children every other week, she would earn, at the most, $10,000 per year from substitute teaching. Thus, the undisputed evidence shows Former Wife had a need for alimony.

The trial court found Former Wife was voluntarily underemployed and adopted Former Husband's forensic accountant's finding that Former Wife's need was $8,427 net per month. The trial court imputed income to Former Wife of $36,400 gross or $3,033 monthly, and arrived at those amounts by computing that Former Wife would work *seven* days a week every other week when she did not have the children and earn $200 a day from tennis officiating. No evidence supported imputing income of $36,400 annually to Former Wife.

The trial court also imputed 72(t) income of $2,164 and interest income of $767 to Former Wife for a total of $5,964 monthly. Even with the trial court's overstated imputed income to Former Wife, *the face of the final judgment shows a deficit of $2,463 each month.* Yet the trial court found no need for alimony. Former Wife brought the deficit of $2,463 to the trial court's attention and requested nominal alimony. The trial court said, "I don't want to leave the door open. And I don't think the law tells me now that I can leave the door open. I think in the past you could leave the door open for that, because there was also permanent alimony back then, and that's why that was done, for permanent alimony, to leave the door open . . . There's nothing I can do with that."[6] The trial court imputed an amount of income to Former Wife that she had never earned and testified that she could not earn. That testimony, while challenged by Former Husband on cross-examination of Former Wife, was not refuted by any other witness. The trial court erred in determining Former Wife did not establish proof of the need for alimony.

In *Rodriguez,* we found "no evidence on the record to support the trial court's finding that the former wife's employer [wa]s able to schedule her

---

[6] The trial court appears to have misunderstood the availability of nominal alimony in the wake of permanent alimony being abolished.

for forty hours per week or more. When asked if she [wa]s able to work forty hours each week if she wanted to, the former wife replied, '[n]o, I can't pick up that many hours.' Thus, even if the trial court disbelieved the former wife's testimony about her medical conditions, the former husband did not present competent, substantial evidence that the former wife's current underemployment is the result of her less-than-diligent efforts to find suitable full-time employment." *Rodriguez*, 17 So. 3d at 871.

In *Inman*, we reversed the trial court where it had calculated the former husband's income based on a future surgery. "In determining a party's income for alimony purposes, a court may not speculate on what might happen in the future but must consider the circumstances that existed at the time of the final hearing." *Inman*, 345 So. 3d at 322 (quoting *Austin v. Austin,* 12 So. 3d 314, 318 (Fla. 2d DCA 2009)). We elaborated that "the trial court 'may only impute a level of income supported by the evidence of employment potential and probable earnings based on *history, qualifications, and prevailing wages.*'" *Id.* (quoting *Koscher*, 201 So. 3d at 741) (quoting *Schram v. Schram*, 932 So. 2d 245, 250 (Fla. 4th DCA 2005)).

Here, the trial court erred in the different ways it imputed income to Former Husband and Former Wife – in essence, it over-imputed income to Former Wife. At trial, Former Husband was scheduled to lose his job in approximately 45 days. The trial court could not speculate that he would continue to earn $600,000 to $700,000, as he had for almost the last decade, and consequently did not impute income to him in that amount, yet it imputed income to Former Wife of $36,400 a year, even though Former Wife testified she had never earned that amount and could not earn that amount in the future.

In *Iglesias v. Iglesias*, 711 So. 2d 1316 (Fla. 2d DCA 1998), the trial court was reversed for basing imputed income for an unemployed roofer on employment advertisements and determining the former husband's imputed income to be "$20 per hour for forty hours a week and then reduced that amount by 5% on the probability that there would be less work in the winter months." *Id.* at 1317. The district court found those conclusions were not supported by the record where "[t]here [wa]s nothing to indicate that any of these jobs [we]re available to the husband, and if so, at what rate of pay. *There [wa]s nothing to establish the husband's ability to be employed forty hours per week on a nearly year-round basis.*" *Id.* (emphasis added).

Here, because the trial court imputed income of $36,400 to Former Wife without competent, substantial evidence to support that determination,

and by that determination concluded Former Wife had no financial need, the trial court abused its discretion.

The trial court has discretion to determine credibility and fashion reasonable remedies to achieve equity. The remedy here was not reasonable. The trial court abused its discretion by denying nominal alimony of $1 per year, while simultaneously recognizing Former Wife will have a shortfall of almost $2,500 each month, when Former Husband has traditionally earned between $600,000 to $700,000 each of the prior eight years.

Therefore, I would reverse the trial court's judgment and remand for an award of nominal alimony[7] and reservation of jurisdiction to revisit alimony upon changed circumstances of the parties. Former Husband's historic income, the length of the marriage, and Former Wife's financial need combine to require nominal alimony. *Nourse*, 948 So. 2d at 904. Nominal alimony would allow Former Wife to apply for a modification with proper evidence if and when Former Husband achieves his demonstrated earning potential.

*        *        *

***Not final until disposition of timely-filed motion for rehearing.***

---

[7] In awarding nominal alimony, the trial court should recalculate Former Wife's imputed income and determine she has a need for alimony.